UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THE UNITED STATES OF AMERICA,

              Plaintiff,                        Case No. 1:20-cr-20416

v.                                        Honorable Thomas L. Ludington
                                               United States District Judge

DARIOUS DANYEL WHITE,

              Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO RECUSE AND
DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT**

This matter is before this Court upon Defendant Darious Danyel White's Motion to Recuse, ECF No. 80, and his Motion to Dismiss the Indictment, ECF No. 81. For the reasons explained hereafter, both Motions will be denied.

**I.**

Thirty firearms were stolen from Bowman's Outdoor Sports in the middle of the night on August 14, 2020. Although the facts surrounding Defendant's indictment come from the parties' filings, they are not clearly outlined in any single pleading. Accordingly, the following explanation is not intended to be dispositive of the facts but to furnish the context necessary to address Defendant's motions.

**A.**

On August 14, 2020, at 3:35 AM, three people burgled 30 firearms from a federally licensed firearms dealer. *See* ECF No. 1 at PageID.3. At the scene of the burglary, the police found

the temporary license plate of a Chevrolet Cruze that belonged to Defendant's then-girlfriend,[1] which led law enforcement to her house in Saginaw, Michigan. *Id.* at PageID.3–4. The criminal complaint alleges that, using air surveillance, law-enforcement officers saw Defendant at the house examining and selling firearms. *Id.* at PageID.5. They also located the car from the burglary, along with Defendant, who was wearing shorts and shoes similar to those worn by one of the burglars in the video recording of the burglary. *Id.* at PageID.5–6. Just before noon, Magistrate Judge David R. Grand issued a warrant for Defendant's arrest and seizure of the stolen firearms. *See generally* ECF No. 24-1 at PageID.98–97. The officers apprehended Defendant outside the house, in which they found 22 of the stolen firearms; in the Chevrolet Cruze, they found a pistol, ammunition, a hammer, and a crowbar with "fresh white paint on the end." ECF No. 1 at PageID.5–6.

After his arrest, Defendant sought to exclude a statement he made at his then-girlfriend's house during his arrest. *See* ECF No. 43 at PageID.187 (describing the conversation); *see also* ECF Nos. 23 (attempting to suppress the admission); 38 (same). As Defendant explained in his motion to suppress, while the police searched her house, they "held" him in a van in which he "requested to talk to [her] . . . before he went to jail." ECF No. 23 at PageID.76. His then-girlfriend asked him, "[W]hy did you take off the license tags on the car at the gun store," and he replied that he "didn't." *Id.* While changing his shorts, which the officers wanted to collect as evidence, Defendant overheard the officers say that they recovered "18 of the 36" stolen firearms. *Id.* at PageID.76–77. Apparently, one of the officers then "reiterated to [Defendant] the importance of recovering the remaining firearms before anyone got hurt." *Id.* at PageID.77. In response, Defendant "excitedly said that the 18 guns in the bag in the yard were all that was taken, and if anyone said there were

---

[1] The parties' papers provide different names for Defendant's then-girlfriend. Accordingly, her name has been excluded from this Order, as it is not material.

more than 18, then the gun store is just trying to get insurance money." *Id.* Defendant "immediately said that he knew that he incriminated himself, but that the guns in the bag were 'on him' and that was all that was taken." *Id.*

Four days later, Criminal Justice Act (CJA) Panel Attorney Jerome Sabbota filed an appearance on Defendant's behalf. *See* ECF No. 6.

Within a month, Defendant "advised Jerome Sabbota" that "he no longer wished Mr. Sabbota to represent him and [that] he will [be] suing him." ECF No. 11 at PageID.28. Citing a breakdown in the attorney-client relationship, Mr. Sabbota filed a motion to withdraw, *id.*, which Magistrate Judge Patricia T. Morris granted before appointing a federal community defender to represent Defendant, ECF No. 13. On September 25, 2020, CJA Attorney Stevens Jacobs filed an appearance to represent Defendant. ECF No. 15.

**B.**

After his arrest in early September 2020, Defendant was indicted for possession of firearms and ammunition by a prohibited person, 18 U.S.C. §§ 922(g)(1), 924(e); possession, concealment, and sale of stolen firearms, *id.* § 922(j); and receipt of firearms and ammunition while under indictment, *id.* § 922(n). *See* ECF No. 12.

Through Mr. Jacobs, Defendant filed two motions: a motion to suppress his confession in December 2020, ECF No. 23, and a motion to quash the search warrant in January 2021, ECF No. 24. On February 17, 2017, Mr. Jacobs filed a motion to withdraw as Defendant's counsel, because Defendant told Mr. Jacobs that he was fired, as he did with Mr. Sabbota. *See generally* ECF No. 31. In essence, Defendant sent Mr. Jacobs a letter threatening not only to sue him "for malpractice" and "for violati[ng] his Constitutional rights to due process," but also to file a "grievance with the Attorney Grievance Commission as well as the Bar Association." *Id.* at PageID.125. Apparently,

Defendant's main grievance was that Mr. Jacobs filed the motion to suppress and the motion to quash without Defendant's consent, despite Defendant's previous demands for Mr. Jacobs to file such motions. *See id.*

To protect Defendant's interests, on March 10, 2021, this Court held a hearing by Zoom videoconference (with Defendant's consent) on the Motion to Withdraw, Motion to Suppress, and Motion to Quash. *United States v. White*, No. 20-CR-20416, 2021 WL 1253385, at *1 (E.D. Mich. Apr. 5, 2021). The hearing was rescheduled to March 25, 2021, to provide Mr. Jacobs an opportunity to show Defendant various videos relevant to his charges. *Id.*

On March 23, 2021, while represented by counsel, Defendant filed the first four of the 15 pro-se motions he has filed since his arrest: (1) a motion to dismiss the indictment for violation of his speedy-trial rights, (2) a motion to suppress statements, (3) a motion for a bill of particulars, and (4) a motion for grand-jury transcripts. *See* ECF Nos. 37–40; *see also* ECF Nos. 54; 58–62; 67; 70; 80–82. The next day, the Government filed a superseding indictment, adding one count of theft of firearms from a licensed dealer, 18 U.S.C. §§ 2, 922(u). *See* ECF No. 36.

At the March 25, 2021 hearing, conducted on Zoom videoconferencing with his consent, Defendant indicated that he still wanted Mr. Jacobs to withdraw. *White*, 2021 WL 1253385, at *1. The undersigned "cautioned [Defendant] that based on counsel's explanation, Mr. Jacobs was effectively representing [Defendant]," so there was no legitimate reason to appoint a third attorney at the public's expense. *Id.* Defendant then explained that he wished to represent himself. *Id.* He also expressed that he "wished to withdraw the Motion to Suppress and Motion to Quash." *Id.* Defendant elaborated that he could adequately represent himself, as he had just filed four motions on his own. *Id.*

- 4 -

Consequently, the undersigned granted the second Motion to Withdraw on April 5, 2021, allowing Defendant to proceed pro se with Mr. Jacobs as standby counsel. *Id.* at *2. In the Order, this Court explained that (1) "[s]tandby counsel cannot assume control of [Defendant's] case" without Defendant's consent; (2) Defendant will "be allowed to control the organization and content of his defense"' (3) Defendant could "use the advice of standby counsel as he . . . sees fit"; and (4) there is "no absolute bar on standby counsel's unsolicited participation of a pro se defendant's case before the jury." *Id.*

### C.

In May 2021, this Court held a hearing on Defendant's four pending motions. During the hearing, the undersigned allowed Defendant to file supplemental briefing to support his speedy-trial motion, which he filed the same day. *See* ECF No. 53. The undersigned also granted Defendant's request to withdraw the motion to suppress. At the hearing, Defendant also filed a motion to dismiss the indictment. ECF No. 54. Finally, Defendant acknowledged the first superseding indictment. ECF No. 55.

In June 2021, Defendant filed a motion for placement transfer, ECF No. 58, three new motions to dismiss the first superseding indictment for alleged defects, ECF Nos. 59–61, and a motion to reinstate the motion to suppress that was withdrawn at his request, ECF No. 62 (seeking to reinstate ECF No. 23). The Government responded to all the motions, except the motion for transfer and the motion to reinstate. ECF Nos. 57; 63.

In July 2021, this Court docketed the transcript of the May 2021 hearing and scheduled a hearing for Defendant's June 2021 motions, to take place on August 18, 2021. ECF Nos. 65; 66.

On August 4, 2021, Defendant filed a motion to subpoena two people to appear at the August 18 hearing. ECF No. 67. On August 6, 2021, this Court issued an order explaining that it

would decide Defendant's motions on the papers without a hearing, canceled the August 18 hearing, and denied Defendant's motion for subpoenas as moot. ECF No. 68. On August 12, 2021, the undersigned issued a written opinion denying all Defendant's pending motions. *United States v. White*, No. 1:20-CR-20416, 2021 WL 3560887, at *2 (E.D. Mich. Aug. 12, 2021) (denying ECF Nos. 37; 39; 54; 58; 59; 60; 61; 62), *in* ECF No. 69.

Four days later, Defendant filed an affidavit from his now-girlfriend, Yolanda Jones, regarding the events related to the previously denied motions. *See* ECF No. 71. Specifically, Ms. Jones swore under penalty of perjury that she "called attorney Stevens J. Jacobs for [Defendant] numerous times and left messages on his voice mail and spoke with his secretary and told them that [Defendant] did not want attorney Stevens Jacobs as his attorney anymore and that he was fired." *Id.* at PageID.363. Ms. Jones elaborated that Attorney Jacobs "would not return [Defendant's] letters or return his phone calls and he wouldn't give [Defendant] the videos from his case." *Id.* In November 2021, Defendant filed his own statement to the same effect. *See generally* ECF No. 78 at PageID.378–85 (indicating that he had his "[c]hild's mother Rhonda Vaughn and [his] Girlfriend Yolanda Jones call Stevens Jacob's office and request the air survailance [sic] videos").

On December 9, 2021, the undersigned granted the parties' stipulated adjournment of the scheduling order, providing about three months for the Probation Department to complete a pre-plea presentence investigation report for Defendant. ECF No. 79.

### D.

On December 14, 2021, Defendant filed a motion requesting the undersigned to recuse himself. Specifically, Defendant asserts that the undersigned is "bias and its a conflict of intrest being that [he] personally allowed and partiscipated in the violation of [Defendant's] constitutional

- 6 -

right to due process." ECF No. 80 at PageID.394 (unaltered). Without citing any specific legal

authority, Defendant elaborates with a "list of the [seven] violations":

> (1) you, the AUSA Ann Nee, and Attorney Stevens Jacobs violated Federal Rule of Criminal Procedure 43 and Constitutional Right to be present for every stage of trial (Due Process Right) <u>US</u> v. <u>Gabrion</u> 648 F.3d 309 (6th Cir. 2011) US v Gagnon 470 U.S. 522, 526, 105 S.Ct 1482, 84 L.Ed 2d 486 (1985) Snyder v. Massachusette, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed 674 (1934) when you held a pre-trial conference without my knowledge or presence and it wasn't recorded which violated the Court Reporters Act, 28 U.S.C § 753 . . . .
> (2) you allow the government to submit a photo shopped picture from the video of the alledged guns on the ground that has not been authenicated that you knew was false and not apart of discovery.
> (3) You refused to supeona two material witnesses, Rhonda Vaughn and Yolanda Jones, who would testified favorably for me provided that Attorney Steven Jacobs was not working as my attorney when he filed the two frivilous motions in the Court causing my right to a speedy trial to be violated. You suppressed favorable testimony from my witnesses in violation of <u>Brady!</u>
> (4) You refused to grant me a copy of the grand jury transcripts when the grand jury transcripts are not sealed, another violation of <u>Brady</u> V <u>Maryland</u>.
> (5) Refused to have me transferred to a facility where I could have adequate meaningful access to the courts, when I swore in an affidavit and through stand by attorney Stevens Jacobs that I couldn't respond to the AUSA's briefs because I was in segregation and on law library Kiosk restriction. In violation of <u>Bounds</u> v. <u>Smith</u> (see attached).
> (6) You stated on the record that I am not attorney Stevens Jacobs employer meaning that he don't work for me he works for the government because the government pays his check.
> (7) You left Attorney Stevens Jacobs on my case as stand by counsel and told me to use him to do the things I want and need done and he refuses to file appeals on the venue decision and to file motion to suppress based on the warrant being overly broad, again violating my access to the courts' rights.

ECF No. 80 at PageID.394–97 (unaltered). Defendant concludes that this list "shows that [the

undersigned] can not [sic] hear or decide this case without [his] personal bias or conflict of interest

because [he] directly violated [Defendant's] rights [himself]." *Id.* at PageID.397. Defendant adds

that if the Motion is denied, he "will write a letter requesting a complete investigation to the Six

Circuit Office of the Circuit Executive and to the United States Attorney General's Office

requesting a complete investigation into this whole case." *Id.* at PageID.397. The Government has responded to the Motion to Recuse. ECF No. 84.

On December 16, 2021, Defendant also filed a motion to dismiss the indictment for lack of subject-matter jurisdiction. ECF No. 81. Defendant's Motion to Dismiss advances two arguments: (1) "Possession of a firearm manufactured in another State does not Constitute engaging in Commerce as defined by the United States Supreme Court" in *United States v. Lopez*, 514 U.S. 549 (1995); and (2) the Federal Government's firearms regulations are barred by the Tenth Amendment of the United States Constitution, because they commandeer a traditional function of state governments as "[t]he state of Michigan have Statutes that Punish Criminals for the acts charged in the defendants Federal indictment." *See generally id.* The Government has responded to Defendant's Motion to Dismiss. ECF No. 85.

Defendant's Motion to Recuse, ECF No. 80, will be discussed and denied *infra* Part II, and Defendant's Motion to Dismiss, ECF No. 81, will be discussed and denied *infra* Part III.

## II.

Two principal statutes govern judicial qualification: 28 U.S.C. § 144 ("Bias or prejudice of judge") and 28 U.S.C. § 455 ("Disqualification of justice, judge, or magistrate judge"). Defendant has not identified the statute he believes governs his allegations of bias. In an abundance of caution, the Motion for Recusal will be analyzed under both statutes.

## A.

By its terms, 28 U.S.C. § 144 applies only to district judges.[2] Absent both an affidavit and motion, there is no basis for disqualification under section 144, and no appeal based on section

---

[2] In its entirety, 28 U.S.C. § 144 reads:
> Whenever a party to any proceeding in a district court makes and files a
> timely and sufficient affidavit that the judge before whom the matter is pending has

144 can be heard. *See, e.g.*, *United States v. Sammons*, 918 F.2d 592, 589 (6th Cir. 1999). A valid affidavit is "a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation." *Granada v. United States*, 51 F.3d 82, 84 (7th Cir. 1995) (citing BLACK'S LAW DICTIONARY 58 (6th ed. 1990)).

Defendant submitted an affidavit in this case on October 30, 2021—a month and a half before he filed the Motion for Recusal. *See generally* ECF No. 78 (titled "Affidavit"). This Court presumes that Defendant intends the October 2021 Affidavit to pair with the December 2021 Motion for Recusal. But, aside from one sentence, the Affidavit does not mention any conduct by the undersigned. *See id.* at PageID.380 ("2. On 12/1/2020 a telephonic status conference was held by [the undersigned]. 3. Again I was not informed of this status conference wasn't allowed to partiscipate and it was not recorded."). Even if Defendant's Motion is construed as an affidavit-motion hybrid or the Affidavit and Motion are read together, section 144 states that such an affidavit must "be accompanied by a certificate of counsel of record that it is made in good faith." 28 U.S.C. § 144.

---

a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. *See also* Margaret M. Russell, *Beyond "Sellouts" and "Race Cards": Black Attorneys and the Straitjacket of Legal Practice*, 95 MICH. L. REV. 766, 775–79 (1997) (discussing Judge Leon Higginbotham's "brilliant disquisition" in *Pennsylvania v. Local Union 542, International Union of Operating Engineers*, 388 F. Supp. 155 (E.D. Pa. 1974), in which he acknowledged "the difficulty inherent in acting as 'judge in [one's] own case' . . . as required by [section 144]" in addressing a § 144 motion).

Defendant's Motion does not satisfy section 144's standard for a certificate of good faith. *See In re Union Leader Corp.*, 292 F.2d 385 (1st Cir. 1961) (holding that the certificate must "carry the assertion that counsel believes the facts alleged to be accurate and correct"); *Brotherhood of Locomotive Firemen v. Bangor & Aroostook R.R.*, 380 F.2d 570, 577–78 & n.17 (D.C. Cir. 1967) (same); *see also United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993) (holding that the certificate must "stat[e] that the affidavit is made in good faith"); *Flegenheimer v. United States*, 110 F.2d 379, 381 (3d Cir. 1936) ("[I]t was right to call on his counsel to give the certificate provided by the statute in order to have the question of bias determined."). Granted, Defendant has filed the Motion pro se and has standby counsel. But neither he nor his standby counsel has recited that Defendant filed the Motion or Affidavit in good faith.

Even if Defendant's Motion could be construed to satisfy the standards for a sufficient affidavit and a certificate of good faith, the merits of the Motion and Affidavit do not satisfy section 144. Neither the Motion nor the Affidavit alleges extrajudicial bias. Section 144 is limited to "personal bias or prejudice," excluding official or "judicial" bias from its scope. *Young v. Track, Inc.*, 324 F.3d 409, 422–23 (6th Cir. 2003) (holding that "recusal is also unwarranted because plaintiffs do not allege bias from extrajudicial sources").

All Defendant's allegations relate to judicial decisionmaking and, therefore, do not allege extrajudicial conduct on the undersigned's part. *See* ECF Nos. 78 at PageID.378–83; 80 at PageID.394–97 (raising allegations related to this Court's holding of a telephonic pretrial conference with counsel; a claim that this Court accepted an image during Defendant's motion proceedings that was allegedly photoshopped; this Court's order that Defendant's motions would be decided on the papers and its denial of his subpoena motion; this Court's ruling denying Defendant's request for grand jury transcripts; this Court's ruling denying Defendant's request for

transfer to another facility; this Court's appointment of Defendant's prior defense counsel as standby counsel; and this Court's alleged explanation of standby counsel's role).

For each of these reasons, Defendant's Motion does not warrant recusal of the undersigned under section 144. Accordingly, Defendant's Motion will be analyzed under section 455.

**B.**

The primary source of law addressing disqualification in the federal judicial system is 28 U.S.C. § 455,[3] which subsumes 28 U.S.C. § 144. *See Liteky v. United States*, 510 U.S. 540, 548 (1994) (stating that section 144 "seems to be properly invocable only when [section] 455(a) can be invoked anyway"); *see also* Melissa H. Maxman, Note, *In Defense of the Constitution's Judicial Impeachment Standard*, 86 MICH. L. REV. 420, 455 n.200 (1987) ("The purpose of recusals is to ensure defendants fair trials by enabling a potentially biased judge to not hear a case.").

Section 455(a) requires disqualification for the *appearance* of partiality (i.e., when a judge's "impartiality might reasonably be questioned"). By contrast, section 455(b)(1) requires disqualification for *actual* partiality (i.e., when a judge "has a personal bias or prejudice toward a party"). The question under section 455(a) is objective: whether the judge's impartiality might be questioned from the perspective of a reasonable person. *See Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016); *United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990).

**i.**

---

[3] Subsections (a) and (b)(1) occupy the core of § 455 and should be read together:
    (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartially might reasonably be questioned.
    (b) He shall also disqualify himself in the following circumstances:
        (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .
28 U.S.C. §§ 455(a)–(b)(1).

As discussed *supra* Section II.A, Defendant has not alleged bias rooted in any extrajudicial conduct on the undersigned's part.

Under section 455(a), an extrajudicial source "is the only *common* basis [for disqualification], but not the exclusive one." *Liteky v. United States*, 510 U.S. 540, 551 (1994). In this way, comments that judges make during judicial proceedings, including remarks that are hostile toward "counsel, the parties, or their case, ordinarily do not support a bias or partiality challenge." *Id.* at 555. However, such judicial remarks *can* "reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555.

Generally, remarks that a judge makes during judicial proceedings—especially in the nature of reactions to what the judge has observed—do not warrant disqualification. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *see, e.g.*, *United States v. McChesney*, 871 F.3d 801, 808 (9th Cir. 2017) ("[J]ocular comments are no basis for recusal."); *In re Steward*, 828 F.3d 672, 682 (8th Cir. 2016) (holding that party was not entitled to recusal merely based on the judge's "exceedingly ill disposed" attitude toward them, as judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings"); *In re City of Milwaukee*, 788 F.3d 717, 721–22 (7th Cir. 2015) (holding that a judge's comments critical of the police in a stop-and-frisk case did not warrant disqualification).

But comments made in judicial proceedings might warrant disqualification, depending on the circumstances. *See, e.g.*, *United States v. Whitman*, 209 F.3d 619 (6th Cir. 2000) (remanding case to different trial judge because the original judge engaged in a "lengthy harangue" of the

- 12 -

defense attorney, which "create[ed] the impression that the impartial administration of the law was not his primary concern").

The moving party bears the burden of justifying the recusal. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999). In this way, allegations of bias "must be a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1355–56 (6th Cir. 1988) (internal quotes omitted).

The only comment that bears a remote possibility of revealing an extrajudicial opinion is Defendant's sixth allegation: "You stated on the record that I am not attorney Stevens Jacobs employer meaning that he don't work for me he works for the government because the government pays his check." ECF No. 80 at PageID.396. The undersigned apparently made a comment at the March 5, 2021 Zoom videoconference on Defendant's Motion to Withdraw, ECF No. 31, believed to be the basis for Defendant's contention. *See* ECF No. 78 at PageID.381–81. According to the undersigned's notes from that meeting, the undersigned merely cautioned Defendant against self-representation and explained some of the mechanics of having standby counsel. Indeed, according to the transcript of the March 5 hearing, the undersigned made no such statement. *See generally* ECF No. 65. The only relevant statement the undersigned made reads as follows:

> THE COURT: All right. Secondly, as a matter of practice, I want to simply caution you one additional time about the risks that are associated with representing yourself without any either legal education or background or experience. Mr. Jacobs is present if you've got questions, but I want to be sure that we have covered the fact that there are, once again, risks that are associated with proceeding without that background.
> I will tell you, for example, that I have no experience or background, or at least limited, in mechanics, so I don't try to fix my own car. That would be dangerous. But I want to make sure that you understand that there are similar dangers that also go with attempting to represent yourself without the background in the same way that I would not be very effective at fixing my own car. Do you understand that?

THE DEFENDANT: Yes.

*Id.* at PageID.300.

Even if the undersigned made the statement Defendant alleges, which is confusingly missing from the hearing transcript, a reasonable person would not view the statement as demonstrating extrajudicial personal bias against Defendant. Indeed, it is well established that a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)); *see also United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017) ("[B]efore a defendant may be deemed to have validly waived the right to counsel, he must be warned specifically of the 'dangers and disadvantages of self-representation,'" then asked "'a series of questions drawn from, or substantially similar to, the model inquiry set forth in the *Bench Book for United States District Judges*,'" followed by "'a strong admonishment that the court recommends against the defendant trying to represent himself or herself.'" (first quoting *Faretta*, 422 U.S. at 835; then quoting *United States v. McBride*, 362 F.3d 360, 366 (6th Cir. 2004); and then quoting *United States v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011))).

A criminal defendant cannot force a judge's recusal every time the judge vindicates the defendant's constitutional right to be advised about the risks of self-representation. The same is true when a judge explains that attorneys must follow certain ethical obligations when representing defendants. For this reason, Defendant's Motion for Recusal does not satisfy 28 U.S.C. § 455(a).

**ii.**

A party may not withhold "a [section 455(a)] recusal application as a fall-back position in the event of adverse rulings on pending matters." *In re IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995);

*Polaroid Corp. v. Eastman Kodak Co.*, 867 F.2d 1415, 1418–21 (Fed. Cir. 1989); *see also Summers v. Singletary*, 199 F.3d 917, 921 (11th Cir. 1997) (same for section 455(b)(1) recusal applications); *In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1363 (8th Cir. 1996) (same). Indeed, "[t]he most egregious delay—the closest thing to per se untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue." *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998); *accord Rabushka v. Crane Co.*, 122 F.3d 559, 566 (8th Cir. 1997); *United States v. Barrett*, 111 F.3d 947, 952 (D.C. Cir. 1997).

Defendant filed his Motion for Recusal against the undersigned more than seven months after the alleged conduct. And, though filed on the docket December 14, 2021, his Affidavit is dated twenty-five days after Magistrate Judge Morris issued an Order of Detention Pending Trial. *Compare* ECF No. 75, *and* ECF No. 76, *and* ECF No. 77, *with* ECF No. 78. For these reasons, Defendant's Motion for Recusal will be denied as untimely.

**iii.**

Defendant's remaining allegations are all based on his subjective belief that the undersigned's rulings were substantively wrong.

As discussed, a defendant's disagreement with a court's judicial rulings does not constitute grounds for recusal. *Liteky*, 510 U.S. at 556 (finding defendant's claims inadequate, because "[t]hey all consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supported) to counsel and to witnesses"); *Nelson*, 922 F.2d at 320 ("Because [Defendant's] recusal claim focuses entirely on judicial matters arising from this action . . ., [he] clearly fails to meet the Sixth Circuit's 'extrajudicial' requirement.").

Similarly, Defendant has not demonstrated that the undersigned's rulings were so erroneous or unsupported that they establish the impossibility of the undersigned's fair judgment.

**a.**

Defendant first argues that the undersigned "held a pre-trial conference without [Defendant's] knowledge or presence and it wasn't recorded." ECF No. 80 at PageID.394–95. Defendant has not stated this argument with sufficient particularity. Indeed, the undersigned is not certain to which pretrial conference Defendant refers.

Although Defendant did not provide the date of the proceeding in question, this Court has searched the record and found docket entries for two pretrial conferences. Defendant might be referring to the October 6, 2020 telephonic pretrial conference that Magistrate Judge Patricia T. Morris held to establish a scheduling order. *See* ECF No. 19. The undersigned did not hold that conference. Defendant might also be referring to the December 1, 2020 telephonic status conference the undersigned held to determine whether to adjourn the scheduling order. ECF Nos. 21; 22. Even if Defendant is referring to one of those conferences, they were only conducted to adjust scheduling: his final pretrial conference has not yet occurred. After four stipulated adjournments, the final pretrial conference is currently scheduled to take place on March 22, 2022, at 4:00 PM. ECF No. 79.

And Defendant has not established that a recording was required or that he suffered any prejudice as a result. The conference did not take place in open court, Defendant's counsel was present (as Defendant was not yet pro se), no one objected to the court reporter's absence, the conference was noted on the docket, and the conference resulted in entry of the parties' stipulation to grant Defendant more time to file pretrial motions. *Cf. United States v. Fackrell*, 991 F.3d 589, 613 (5th Cir. 2021) (holding that conferences not held in open court are not court sessions that

must be recorded); *United States v. Hein*, 769 F.2d 609, 611 (9th Cir. 1985) (per curiam) (finding no abuse of discretion for failure to record pretrial chambers conference for which no one requested a recording).

Defendant also relies on Federal Rule of Criminal Procedure 43, which gives the defendant the right to attend: "(1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing." FED. R. CRIM. P. 43. Defendant attended his initial appearance before Magistrate Judge Elizabeth Stafford on August 17, 2020. ECF No. 3. Defendant also attended the only two arraignments. ECF Nos. 16; 48–50. Further, Defendant's plea deadline is scheduled for March 15, 2022. ECF No. 79. Obviously, trial and sentencing have not yet occurred. *See id.* (scheduling trial for 4/12/2022, at 8:30 AM).

Finally, Defendant relies upon three cases to argue that his alleged absence was a violation of his right to due process, none of which support his argument. *See United States v. Gabrion*, 648 F.3d 307, 335 (6th Cir. 2011) (holding that the defendant's "absence from [pretrial] conferences did not have a reasonably substantial relation to his opportunity to defend himself"), *reh'g en banc granted, opinion vacated* (Nov. 17, 2011), *on reh'g en banc*, 719 F.3d 511 (6th Cir. 2013); *United States v. Gagnon*, 470 U.S. 522, 527 (1985) (holding that the four defendants did not have a due process right to be present at an in camera discussion regarding a juror's concerns that one of the defendants was drawing sketches of the jury members, because the defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending"); *Snyder v. Massachusetts*, 291 U.S. 97, 106–07 (1934) (holding that the Fourteenth Amendment does not "assure[] the privilege of presence when presence would be useless, or the benefit but a shadow"), *overruled in part by Malloy v. Hogan*, 378 U.S. 1 (1964).

Plus, Defendant's first argument does not sufficiently allege personal bias. Indeed, attending a status conference between the parties is a judicial act. *Young v. Gall*, No. 1:15 CV 429, 2015 WL 4164813, at *2 (N.D. Ohio July 9, 2015).

For these reasons, Defendant's first argument does not warrant recusal under section 455.

**b.**

The undersigned's rulings on Defendant's various motions were supported by law. Defendant was not entitled to a motion hearing by right, and the undersigned acted within his discretion in deciding to resolve the motions on the papers. *See, e.g.*, *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996). In addition, the undersigned issued what is believed to be a reasoned opinion that addressed each of Defendant's substantive motions before denying them. *See United States v. White*, No. 1:20-CR-20416, 2021 WL 3560887 (E.D. Mich. Aug. 12, 2021), *in* ECF No. 69; *see also* ECF Nos. 42–45; 56–57; 63. Defendant has also not offered any evidence for his claim that an image the Government submitted was photoshopped, and he has not offered evidence that the undersigned had personal knowledge related to the alleged photoshopping.

Finally, Defendant's complaints regarding the undersigned's decision to appoint standby counsel are misplaced. The appointment of standby counsel to assist Defendant after he exercised his self-representation right protects Defendant's rights; it does not violate them. *See* discussion *supra* Section II.B.i. And Defendant's disagreements with his standby counsel on legal strategy are not evidence of the undersigned's bias or conflicts of interest; those conversations did not include the undersigned, and any attempts at such ex-parte communications are ill-advised.

For these reasons, Defendants second, third, fourth, fifth, and seventh arguments do not warrant recusal under section 455. Consequently, Defendant's Motion to Recuse, ECF No. 80, will be denied.

**III.**

On December 16, 2021, Defendant filed a motion to dismiss the indictment for lack of subject-matter jurisdiction. ECF No. 81.

**A.**

Defendant's Motion to Dismiss the Indictment first argues that "Possession of a firearm manufactured in another State does not Constitute engaging in Commerce as defined by the United States Supreme Court" in *United States v. Lopez*, 514 U.S. 549 (1995). *Id.* at PageID.401. In other words, Defendant argues that, after *Lopez*, the Commerce Clause did not empower Congress to enact 18 U.S.C. § 922(g)(1), 922(j), 922(n), or 922(u). Defendant also argues that the manufacture of a firearm outside the state where he possessed it does not establish the required interstate-commerce nexus. *See id.* at PageID.404–05.

As explained below, both of Defendant's arguments are contrary to well-established law.

**i.**

The firearm offenses charged in Defendant's second superseding indictment are all within the scope of Congress's Commerce Clause powers.

In *Lopez*, the Supreme Court struck down the Gun-Free School Zones Act, as codified in 18 U.S.C. § 922(q),[4] after finding that the Act exceeded the scope of the Commerce Clause, because it did not regulate a commercial activity and the language of the statute did not contain an explicit requirement that the firearm possession be connected to interstate commerce. *Lopez*, 514 U.S. at 551.

---

[4] Section 922(q) made it unlawful "'for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.'" *United States v. Lopez*, 514 U.S. 549, 551 (1995).

Since *Lopez*, the Sixth Circuit has directly addressed section 922(g)(1)'s interstate-commerce requirement, holding that section 922(g)(1) is facially constitutional. *See United States v. Chesney*, 86 F.3d. 564, 567–72, 574 (6th Cir. 1996). In *Chesney*, the Sixth Circuit applied *Lopez* and held that the section 922(g)(1) felon-in-possession statute was properly grounded in Congress's Commerce Clause powers. *Chesney*, 86 F.3d at 569–70. First, the *Chesney* panel noted that, unlike section 922(q), the prohibition against felons possessing firearms in or affecting commerce was "directly linked by Congress as part of a statute prohibiting the related economic activities of interstate shipping, transporting, or receiving of firearms." *Id.* at 570. In this way, the prohibition in section 922(g)(1) was "'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'" *Id.* (quoting *Lopez*, 514 U.S. at 561). As such, section 922(g)(1) was "a comprehensive statute regulating commerce in firearms by felons" that was proper under the Commerce Clause after *Lopez*. *Id.*

Second, the *Chesney* panel found that courts have universally and correctly rejected facial challenges to section 922(g)(1) after *Lopez* because, unlike section 922(q), section 922(g)(1)'s text contains an explicit "jurisdictional provision that requires the government to prove that the firearm was possessed 'in or affecting commerce.'" *Id.* at 568 (collecting cases). This "'jurisdictional element . . . would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce.'" *Id.* at 570 (quoting *Lopez*, 514 U.S. at 561). Therefore, like the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, the Sixth Circuit expressly held that section 922(g)(1) was "constitutional on its face under the Commerce Clause analysis used by the Supreme Court in *Lopez*." *Id.* at 570.

Since *Chesney*, the Sixth Circuit has repeatedly upheld the constitutionality of the federal felon-in-possession statute. *See, e.g.*, *Wilson v. United States*, No. 20-1161, 2020 WL 8921408, at *2 (6th Cir. July 10, 2020); *United States v. McBee*, 295 F. App'x 796, 798 (6th Cir. 2008) (unpublished); *United States v. Henry*, 429 F.3d 603, 619–20 (6th Cir. 2005); *United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

Similarly, the *Chesney* analysis demonstrates the constitutionality of the other three firearm offenses with which Defendant was charged in the superseding indictment. Indeed, like section 922(g)(1), each of sections 922(j), 922(n), and 922(u) contains an explicit jurisdictional element, ensuring that a case-by-case inquiry will take place as to the requisite nexus to interstate commerce. And each provision demonstrates that the prohibited conduct is part of a comprehensive state regulating firearms in interstate commerce. *See* 18 U.S.C. § 922(j) (criminalizing conduct involving any stolen firearm or ammunition "which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen"); *id.* § 922(n) (same involving any firearm or ammunition "which has been shipped or transported in interstate or foreign commerce," or the shipment or transport "in interstate or foreign commerce" of such items); *id.* § 922(u) (same involving any firearm in a federal firearm licensee's business inventory "that has been shipped or transported in interstate or foreign commerce"). In this way, all four firearm offenses charged in the superseding indictment fall squarely within Congress's Commerce Clause powers. *See United States v. Pritchett*, 327 F.3d 1183, 1185–86 (11th Cir. 2003) (holding that section 922(j) was a proper exercise of Congress's Commerce Clause powers); *United States v. Waldman*, No. 21-10637, 2021 WL 6101365, at *1 (5th Cir. Dec. 21, 2021) (per curiam) (unpublished) (holding that the defendant's argument that section 922(n) was unconstitutional for an insufficient nexus with interstate commerce was

foreclosed by precedent rejecting similar arguments against section 922(g)); *United States v. Hardy*, 120 F.3d 76, 77–78 (7th Cir. 1997) (per curiam) (holding, like the Tenth and Eighth Circuits, that section 922(u) is a valid exercise of Congress's Commerce Clause powers).

In support of his arguments, Defendant primarily relies on *United States v. American Building Maintenance Industries*, 422 U.S. 271 (1975) [hereinafter *ABMI*]. But *ABMI* does not support Defendant's arguments. Indeed, *ABMI* addressed an antitrust statute that regulated corporations "engaged in commerce," and found that the qualifying phrase "engaged in commerce" was distinct and more limited than the full scope of Congress's power to regulate activities "affecting commerce." *See id.* at 275–83. By contrast, the statutes at issue here do not use the limiting "engaged in commerce" language; instead, they are founded in a proper exercise of Congress's broader powers under the Commerce Clause to regulate activities "affecting commerce," as described above.

### ii.

It is well settled that a firearm meets the interstate-commerce element for federal firearm offenses, like the four offenses in Defendant's superseding indictment, if it traveled in interstate commerce before the committed offense. Similarly, it is well settled that the Government establishes the interstate-travel element with proof that the firearm was manufactured in a state other than the state in which the defendant possessed it.

The Sixth Circuit has expressly held that the Government can satisfy section 922(g)(1)'s interstate-commerce nexus by establishing that the firearm in question crossed a state line before the alleged possession. For example, the *Chesney* defendant argued that the Government had to prove a substantial nexus between his felon-in-possession offense and interstate commerce after *Lopez*, and that a firearm's travel in interstate commerce could not satisfy the burden. *Chesney*, 86

F.3d at 570. The *Chesney* panel rejected that argument, holding that the defendant's possession of a firearm that previously moved in interstate commerce met section 922(g)(1)'s "in or affecting commerce" requirement. *Id.* at 572. To that end, the *Chesney* panel stated, "*Lopez* also did not disturb the Supreme Court's precedents which indicate that a firearm that has been transported *at any time* in interstate commerce has a sufficient effect on commerce to allow Congress to regulate the possession of that firearm pursuant to its Commerce Clause powers." *Id.* at 570–71 (emphasis added). The *Chesney* panel elaborated that "[t]he fact that Chesney possessed a gun that previously moved in interstate commerce provides a sufficient nexus between Chesney's conduct and interstate commerce to allow Congress to regulate Chesney's conduct pursuant to the Commerce Clause. Therefore, section 922(g)(1) is constitutional as applied to Chesney." *Id.* at 572.

Since *Chesney*, the Sixth Circuit has repeatedly upheld that a firearm's travel in interstate commerce—to include proof that the firearm was manufactured in a state other than the state in which the defendant possessed it—establishes the required interstate nexus. *See, e.g.*, *Henry*, 429 F.3d at 619–20 (stating that the Sixth Circuit has "explicitly held post-*Lopez* that a [section] 922(g)(1) conviction comports with the Commerce Clause so long as the defendant 'possessed a gun that previously had moved in interstate commerce,'" and that "a reversal of course from *Chesney* would constitute a radical and unjustified departure from the precedents of the Supreme Court, this court, and our sister circuits"); *id.* at 620 (noting that "every other circuit to have addressed the issue has held, consistently with *Chesney*, that the Commerce Clause requires no proof other than that the firearm or ammunition traveled in interstate commerce"); *United States v. Six*, 600 F. App'x 346, 357 (6th Cir. 2015) (unpublished) (finding that evidence of a defendant's possession in Michigan of a firearm manufactured outside Michigan was sufficient to support section 922(g)(1)'s interstate-commerce element); *McBee*, 295 F. App'x at 798 (holding that a

firearm need only "have been, at some time, in interstate commerce" prior to its possession); *United States v. Davis*, 27 F. App'x 592, 600–01 (6th Cir. 2001) (unpublished). *See generally* SIXTH CIR., PATTERN CRIMINAL JURY INSTRUCTIONS 12.01 (2021 ed.) ("That the specified firearm [ammunition] crossed a state line prior to [during] the alleged possession. [It is sufficient for this element to show that the firearm [ammunition] was manufactured in a state other than [*name state in which offense occurred*].]" (brackets and emphasis in original)); SIXTH CIR., PATTERN CRIMINAL JURY INSTRUCTIONS, Committee commentary to instruction 12.01 (discussing Sixth Circuit case law related to the proof necessary to support the "in or affecting commerce" requirement for section 922(g)(1)).

Together, these authorities establish that section 922(g)(1)'s "in or affecting commerce" language merely requires that the firearm moved in interstate commerce before the defendant possessed it. The same principle applies with at least equal force to the other three firearm offenses with which Defendant was charged in the superseding indictment, as their text expressly regulates conduct regarding firearms that have moved in interstate commerce before the offense. *See* 18 U.S.C. § 922(j) (referring to any stolen firearm or ammunition "which *has been* shipped or transported in, interstate or foreign commerce, either *before* or after it was stolen" (emphases added)); *id.* § 922(n) (referring to any firearm or ammunition "which *has been* shipped or transported in interstate or foreign commerce" (emphasis added)); *id.* § 922(u) (prohibiting thefts or other unlawful takings from a federal firearm licensee's business inventory of any firearm "that *has been* shipped or transported in interstate or foreign commerce" (emphasis added)); *see also United States v. Redd*, 29 F. App'x 290, 305 (6th Cir. 2002) (unpublished) (holding that evidence of a firearm's manufacture outside Michigan and its theft from a business in Michigan before the defendant's possession satisfies section 922(j)'s interstate-commerce element); *United States v.*

*Hardy*, 120 F.3d 76, 77–78 (7th Cir. 1997) (per curiam) (holding that proof that a weapon had moved across state lines satisfies section 922(u)'s jurisdictional element).

Thus, contrary to Defendant's assertions, ECF No. 81 at PageID.405–06, none of the charged offenses is restricted to defendants who directly or indirectly carry a firearm across a state line, and Congress's Commerce Clause power is not so limited. For the same reasons, the Government need not prove that Defendant's offenses "substantially affected interstate commerce [n]ationally," ECF No. 81 at PageID.406, for this Court to have jurisdiction. As discussed *supra*, proof that a firearm crossed state lines before the offense is sufficient.

Finally, the sufficiency of proof needed to establish an element of an offense is a question for trial; it does not deprive courts of subject-matter jurisdiction. *See United States v. Meade*, 677 F. App'x 959, 975 (6th Cir. 2017) (unpublished) (holding that an interstate-commerce requirement for federal offenses, "is 'not jurisdictional in a sense that it deprives the district court of subject matter jurisdiction,'" and is "better characterized as an argument against the sufficiency of the evidence" (quoting *United States v. Turner*, 272 F.3d 380, 390 (6th Cir. 2001))); *see also United States v. Rayborn*, 312 F.3d 229, 231–32 (6th Cir. 2002); *United States v. Turner*, 272 F.3d 380, 390 (6th Cir. 2001) (finding that the failure to prove nexus between the crime and interstate commerce did not strip the federal court's jurisdiction). For this reason, it is not grounds to dismiss the indictment.

For these reasons, Defendant's argument that Congress did not have power to pass the firearms statutes with which he was charged has no merit.

**B.**

Defendant's Motion to Dismiss the Indictment also contends that the Tenth Amendment bars the Federal Government's firearms regulations, because "[t]he state of Michigan have Statutes

that Punish Criminals for the acts charged in the defendants Federal indictment." ECF No. 81 at PageID.401 (unaltered).

This argument is unsupported by law. As discussed, Congress may regulate activities affecting interstate commerce, and it properly exercised that power under the Constitution when it enacted the cited federal firearms statutes. *See* discussion *supra* Section III.A. In this way, the federal firearms statutes in question do not violate the Tenth Amendment. *Hardy*, 120 F.3d at 78 ("Where Congress acts pursuant to a valid grant of power, which it has done here, it does not run afoul of the Tenth Amendment merely because it regulates an activity that is also within the states' purview." (citing *United States v. Kennedy*, 91 F.3d 884, 891 (7th Cir. 1996))). Defendant also fails to state a claim for how Congress's enactment of the federal firearms statutes under the Commerce Clause violates his "constitutional right to be free from discrimination, equal protection of the laws and the right to due process," ECF No. 81 at PageID.406.

For these reasons, Defendant's argument that this Court has no subject-matter jurisdiction has no merit. Consequently, his Motion to Dismiss the Indictment will be denied.

## IV.

Accordingly, it is **ORDERED** that Defendant's Formal Request That You Recuse Yourself From This Case, ECF No. 80, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion to Dismiss Indictment for Lack of Subject Matter Jurisdiction, ECF No. 81, is **DENIED**.

Dated: January 27, 2022                          s/Thomas L. Ludington
                                                THOMAS L. LUDINGTON
                                                United States District Judge