UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THE UNITED STATES OF AMERICA,

                Plaintiff,                              Case No. 1:20-cr-20416

v.                                              Honorable Thomas L. Ludington
                                                United States District Judge

DARIOUS DANYEL WHITE,

                Defendant.

_____/

**OPINION AND ORDER (1) FINDING DEFENDANT'S WAIVER OF HIS RIGHT TO APPOINTED COUNSEL, (2) GRANTING STANDBY COUNSEL'S MOTION TO WITHDRAW, (3) DENYING DEFENDANT'S MOTION FOR SPECIAL INVESTIGATOR, AND (4) DENYING DEFENDANT'S MOTION FOR LEGAL TABLET**

      This matter is before this Court upon a motion to withdraw from Attorney Stevens Jacobs, Defendant's court-appointed public defender. ECF No. 87. While that Motion was pending, Defendant filed a motion for a special investigator and a motion for a legal tablet. ECF Nos. 93; 94. As explained hereafter, Defendant has waived his right to counsel, Attorney Jacobs's Motion will be granted, and Defendant's Motions will be denied.

**I.**

      Thirty firearms were stolen from Bowman's Outdoor Sports in the middle of the night on August 14, 2020. Although the alleged facts surrounding Defendant Darious Danyel White's indictment come from the parties' filings, they are not clearly outlined in any single pleading. Accordingly, the following explanation is not intended to be dispositive of the alleged facts but to furnish the context necessary to address the motions at issue.

**A.**

On August 14, 2020, at 3:35 AM, three people burglarized 30 firearms from a federally licensed firearms dealer. *See* ECF No. 1 at PageID.3. At the scene, the police found the temporary license plate of a Chevrolet Cruze that belonged to Defendant's then-girlfriend,[1] which led law enforcement to her house in Saginaw, Michigan. *Id.* at PageID.3–4. The criminal complaint alleges that, using air surveillance, law-enforcement officers saw Defendant at the house examining and selling firearms. *Id.* at PageID.5. They also located the car from the burglary, along with Defendant, who was wearing shorts and shoes similar to those worn by one of the burglars in a video recording of the burglary. *Id.* at PageID.5–6. Just before noon, Magistrate Judge David R. Grand issued a warrant for Defendant's arrest and seizure of the stolen firearms. *See* ECF No. 24-1 at PageID.97–99. The officers apprehended Defendant outside the house, in which they found 22 of the stolen firearms; in the Chevrolet Cruze, they found a pistol, ammunition, a hammer, and a crowbar with "fresh white paint on the end." ECF No. 1 at PageID.5–6.

After his arrest, Defendant sought to exclude a statement he made at his then-girlfriend's house during his arrest. *See* ECF No. 43 at PageID.187 (describing the conversation); *see also* ECF Nos. 23 (attempting to suppress the admission); 38 (same). As Defendant explained in his motion to suppress, while the police searched the house, they "held" him in a van in which he "requested to talk to [his then-girlfriend] . . . before he went to jail." ECF No. 23 at PageID.76. His then-girlfriend asked him, "[W]hy did you take off the license tags on the car at the gun store," and he replied that he "didn't." *Id.* While changing his shorts, which the officers wanted to collect as evidence, Defendant overheard the officers say that they recovered "18 of the 36" stolen

---

[1] The parties' papers provide different names for Defendant's then-girlfriend. Accordingly, her name has been excluded from this Order, as it is not material.

firearms. *Id.* at PageID.76–77. Apparently, one of the officers then "reiterated to [Defendant] the importance of recovering the remaining firearms before anyone got hurt." *Id.* at PageID.77. In response, Defendant "excitedly said that the 18 guns in the bag in the yard were all that was taken, and if anyone said there were more than 18, then the gun store is just trying to get insurance money." *Id.* Defendant "immediately said that he knew that he incriminated himself, but that the guns in the bag were 'on him' and that was all that was taken." *Id.*

Four days later, Criminal Justice Act (CJA) Panel Attorney Jerome Sabbota filed an appearance on Defendant's behalf. *See* ECF No. 6.

Within a month, Defendant "advised Jerome Sabbota" that "he no longer wished Mr. Sabbota to represent him and [that] he will [be] suing him." ECF No. 11 at PageID.28. Citing a breakdown in the attorney-client relationship, Attorney Sabbota filed a motion to withdraw, *id.*, which Magistrate Judge Patricia T. Morris granted before appointing a federal community defender to represent Defendant, ECF No. 13. On September 25, 2020, CJA Attorney Stevens Jacobs filed an appearance to represent Defendant. ECF No. 15.

**B.**

After his arrest in early September 2020, Defendant was indicted for possession of firearms and ammunition by a prohibited person, 18 U.S.C. §§ 922(g)(1), 924(e); possession, concealment, and sale of stolen firearms, *id.* § 922(j); and receipt of firearms and ammunition while under indictment, *id.* § 922(n). *See* ECF No. 12.

Attorney Jacobs filed two motions on Defendant's behalf: a December 2020 motion to suppress his confession, ECF No. 23, and a January 2021 motion to quash the search warrant, ECF No. 24. These two motions became a confusing point of contention between Defendant and his second appointed public defender, Attorney Jacobs.

In February 2021, Attorney Jacobs filed his first motion to withdraw after Defendant informed Attorney Jacobs that he was fired, as he did with Attorney Sabbota. *See generally* ECF No. 31. Defendant sent Attorney Jacobs a letter threatening not only to sue him "for malpractice" and "for violati[ng] his Constitutional rights to due process," but also to file a "grievance with the Attorney Grievance Commission as well as the Bar Association." *Id.* at PageID.125. Apparently, Defendant's main grievance was that Attorney Jacobs filed the motion to suppress and the motion to quash without informing Defendant, despite Defendant's previous demands that Attorney Jacobs file those motions. *See id.*

## C.

To protect Defendant's interests, on March 10, 2021, this Court held a hearing by Zoom videoconference—with Defendant's consent—on the motion to withdraw, the motion to suppress, and the motion to quash. *United States v. White*, No. 20-CR-20416, 2021 WL 1253385, at *1 (E.D. Mich. Apr. 5, 2021); *see* Tr., ECF No. 92. As explained below, this turned out to be the first day of a two-day hearing.

During the March 10, 2021 hearing, Attorney Jacobs outlined his legal theories for the motion to suppress and the motion to quash. *See id.* at PageID.555. In summary, he explained that "if the search warrant is invalid, then going in the house and searching the trunk of the vehicle and seizing the guns are fruit of the poisonous tree, and it would . . . be suppressed." *Id.*

Addressing his motion to withdraw, Attorney Jacobs explained that after meeting with Defendant several times, Defendant sent him a letter dated February 6, 2021. *Id.* at PageID.556. Attorney Jacobs elaborated that Defendant's letter stated: (1) Jacobs filed two unauthorized motions; (2) Jacobs refused to withdraw despite Defendant's instruction that he was to withdraw; (3) Jacobs was ineffective; (4) Defendant will sue Jacobs for malpractice; (5) Defendant will file

- 4 -

a grievance with the Attorney Grievance Commission and the Bar Association; and (6) Defendant will sue Jacobs for violating his constitutional rights. *Id.* at PageID.556–57. Attorney Jacobs then contested the letter's allegations, stating that the letter was the first time Defendant ever told him to withdraw. *Id.* at PageID.557.

Attorney Jacobs elaborated that an earlier letter from December 2020 instructed him to file the motion to suppress and the motion to quash. *See id.* at PageID.557–58. Indeed, as this Court noted during the hearing, *see id.*, a December 6, 2020 letter that Defendant sent to Attorney Jacobs appears to direct him to file those two motions. *See* ECF No. 30 at PageID.118 ("I told you when you last visited me here in the Saginaw County jail to file the motion to suppress all the evidence and the alleged statement because I was arrested without probable cause . . . ."); *id.* at PageID.119–20 ("Immediately after receiving this letter I want you to file a motion to suppress all evidence seized and any alledged [sic] statements for violation of my 4th amendment, list these facts in the motion . . . ."). Attorney Jacobs then explained how he met with Defendant five times to provide copies of all the written discovery and discuss the video evidence. ECF No. 92 at PageID.559.

Defendant concurred with Attorney Jacobs's "effort to seek to withdraw" yet insisted on "bringing a motion to dismiss based upon his performance." *Id.* at PageID.560. The deficient performance, Defendant asserted, was that Attorney Jacobs filed the two motions that Defendant demanded but "without sending [him] a copy, without doing nothing, [and] without consulting [him]." *Id.* at PageID.560. Defendant continued that he "didn't authorize [Attorney Jacobs] to file them motions that he filed." *Id.* In Defendant's view, he demanded Attorney Jacobs to file motions alleging "that the agents in this case . . . lied on [him] in they affidavits when they specifically said [he] was identified in the backyard wearing the clothing [he] was arrested in"—in other words, a

motion to suppress. *See id.* at PageID.560–61. This Court then engaged in a fact-finding colloquy

with the Government, *see id.* at PageID.561–70, and with Defendant, *see id.* at PageID.570–73.

Eventually, Defendant returned to his allegations against Attorney Jacobs. *See id.* at

PageID.573. Defendant explained that even though his "godbrother" who was also arrested due to

his involvement in the burglary had obtained the surveillance videos, Defendant had not yet seen

them despite several demands to Attorney Jacobs. *Id.* at PageID.573–75. Attorney Jacobs

explained that, though the Government produced three videos, he had "difficulties" getting them

to Defendant. *Id.* at PageID.575–76. Attorney Jacobs explained that he instead "s[a]t down with

[Defendant] and went through [his] notes with [Defendant] and shared with [Defendant] what [he]

thought that showed." *Id.* at PageID.576. Attorney Jacobs elaborated that he filed the motions

using the same arguments he shared with Defendant, and that "once [he] received the February 6th

letter. . . [he] filed the motion to withdraw and felt that [he] should not go back to the jail and show

[Defendant] the videos until the Court rules on the motion to withdraw." *Id.* at PageID.576. This

Court found that Attorney Jacobs was not able to get the surveillance videos to Defendant because

of "the filing that [Defendant] made with the Court challenging [Attorney Jacobs's]

representation." *See id.* at PageID.585.

Attention then turned to Defendant's motion to quash. This Court first confirmed with

Attorney Jacobs that the motion to quash "challenge[d] the accuracy of the police officers'

affidavits in support of the search warrant for the residence," and that it therefore corresponded

with Defendant's instruction. *See id.* at PageID.576. Defendant then explained his independent

legal theory for why the search warrant was invalid, *see id.* at PageID.577–78, before arguing the

merits of his motion to dismiss, *see id.* at PageID.578–82. In summary, Defendant argued that the

first search warrant for the house where he was arrested was invalid because a second warrant to

search his cell phone incorrectly stated that the police saw him in the backyard of the house wearing the same clothes as someone at the burglary. *See id.* at PageID.580–82. This Court found that "the Government's assertion that its identification of [Defendant] being on the property is of secondary significance to the question of whether they could have obtained the [first] search warrant in any event." *Id.* at PageID.585.

Next, this Court engaged in a colloquy with Defendant regarding whether he would, if convicted, receive an armed-career-criminal enhancement attributable to a 1995 juvenile conviction. *See id.* at PageID.585–91. During this colloquy, Defendant expressed his full understanding of the gravity of his charges. *See id.* at PageID.588 ("We couldn't do a plea. We can't even do an effective plea if they got my guidelines set at 218 or 220 months . . . ."). Attorney Jacobs indicated that he investigated Defendant's claim, but it had no merit. *See id.*

This Court attempted to redirect Defendant back to Attorney Jacobs's motion to withdraw. *See id.* at PageID.591 ("Mr. White, I don't think you're listening."). But Defendant insisted on raising the issue that his "right to a speedy trial has been violated," which was not before this Court on that day. *Id.* This Court noted that Defendant made the same speedy-trial argument against Attorney Sabbotta, which Defendant acknowledged. *Id.* This Court explained that attorneys have "an entire range of considerations . . . to bring to the decisions that need to be made with respect to effectively representing [him]." *Id.* at PageID.592.

Then this Court reminded Defendant that Attorney Jacobs filed the motion to quash that Defendant demanded. Yet Defendant continued to deny that he told Attorney Jacobs to file such a motion. *Id.* Then Attorney Jacobs reiterated that "he wanted me to file a motion to get rid of the guns that were seized, so I filed a motion to quash the search warrant." *Id.* at PageID.592–93.

Ultimately, Defendant agreed with Attorney Jacobs's motion to withdraw. *Id.* at PageID.591.

This Court then found that Attorney Jacobs (1) did nothing "outside of the scope of his legitimate representation"; (2) "has been responsive on questions related to the Armed Career Criminal Act"; (3) "has been responsive in obtaining the discovery"; (4) "has spent, according to him, five different meetings in the Saginaw County Jail; according to [Defendant] four"; and (5) has "nevertheless, more than adequately do[ne] everything necessary to represent [Defendant]." *Id.* at PageID.593.

This Court concluded that it would not appoint a third attorney to Defendant because "it's quite apparent that [Attorney Jacobs] is more than adequately furnishing representation to [Defendant]." *Id.* at PageID.593.

Then this Court strongly suggested to Defendant that he not represent himself due to "significant risks." *Id.* Yet Defendant responded, "I'd like to represent myself." *Id.* at PageID.594. Engaging in a reasonable presumption against the Defendant's waiver of the right to counsel, this Court granted Attorney Jacobs's request to allow him to facilitate Defendant's viewing of the surveillance videos as relevant to the first search warrant. *See id.* at PageID.594–96. Attorney Jacobs indicated that he would bring a laptop to the jail for Defendant to view the videos. *Id.* at PageID.596. Then Defendant requested a transfer to a different jail, which was denied as "a decision that's made by the Marshal Service not the Court." *Id.*

To make a more informed finding about whether Defendant had waived his right to counsel, this Court decided to continue the hearing on the motion to withdraw two weeks after Defendant had the opportunity to view the surveillance videos, despite Defendant's repeated insistence that he asserted his right to represent himself and should be allowed to do so. *See id.* at

PageID.597–98 ("I want to make sure that you've got all the information you need to make an intelligent decision, both with respect to the tactical decision as to what you want to challenge, as well as the decision about whether you want to proceed with Mr. Jacobs, or that you want to proceed to represent yourself, or whether you would like to proceed representing yourself with standby counsel, which we can also do.")

The second part of the hearing was scheduled for March 25, 2021, to provide Attorney Jacobs an opportunity to show Defendant the three videos. *Id.*

Two days before the hearing, while represented by Attorney Jacobs, Defendant filed the first four of the 17 *pro se* motions he has filed since his arrest: (1) a motion to dismiss the indictment for violation of his speedy-trial rights, (2) a motion to suppress statements, (3) a motion for a bill of particulars, and (4) a motion for grand-jury transcripts. *See* ECF Nos. 37–40; *see also* ECF Nos. 54; 58–62; 67; 70; 80–82; 93; 94.

The next day, the Government filed a superseding indictment, adding one count of theft of firearms from a licensed dealer, 18 U.S.C. §§ 2, 922(u). *See* ECF No. 36.

**D.**

On March 25, 2021, this Court conducted the second part of the hearing on Attorney Jacobs's motion to withdraw—again with Defendant's consent—on Zoom videoconferencing. *See* Tr., ECF No. 90. The purpose of the hearing was (1) to determine whether Defendant had the opportunity to view the three surveillance videos, (2) to address Attorney Jacobs's motion to withdraw, and (3) to determine whether Defendant waived his right to counsel and could sufficiently represent himself. *See id.* at PageID.521.

Attorney Jacobs brought all three videos to the Saginaw County Jail for Defendant to view. *See id.* at PageID.522. As Defendant acknowledged, "He was given an opportunity to view all the

videos." *Id.* He "watched one in its entirety," he watched "portions" of the second one, and "he elected not to watch the rest." *Id.*

Defendant then indicated that he still wanted Attorney Jacobs to withdraw. *Id*. at PageID.522–23. Because Defendant had not identified a legitimate objection to Attorney Jacobs's representation, this Court indicated that it would not appoint a third attorney "absent some explanation for the breakdown of communication based on some professionally reasonable justification." *Id.*

Then this Court conducted a *Faretta* inquiry to determine whether Defendant could represent himself. *See id.* at PageID.523–24. Defendant insisted that he was familiar with the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. *See id.* at PageID.523. Defendant also indicated that he was aware of the risks of representing himself without the background, education, and experience of "the attorneys that have been appointed to represent [him]." *See id.* at PageID. 523. And Defendant acknowledged that he had "a chance to consult with Mr. Jacobs concerning that." *See id.* at PageID.523–24.

Taking that inquiry in conjunction with Defendant's statements during the first day of the hearing, this Court found that Defendant's decision was "informed" and "voluntary," and that Defendant could make the decision to represent himself. *See id.* at PageID.524. "[I]n the interest of justice," however, this Court engaged in a reasonable presumption against waiver for the second time and appointed Attorney Jacobs as standby counsel. *See id.* This Court explained that Defendant would "be primarily responsible for decisions that need to be made during the course of [his defense], but Mr. Jacobs [would] be available if [Defendant] elect[s] to have a conversation with him to obtain his advice and to discuss any issue outside of the Court's presence as well as

the Government's presence." *Id.* Defendant objected to the appointment, which this Court overruled before turning to Defendant's motion to suppress and motion to dismiss. *See id.*

Defendant expressed that he wished to withdraw the motion to suppress and the motion to quash. *Id.* at PageID.525. Defendant explained that he "didn't authorize [Attorney Jacobs] to file them." *Id.* Defendant then elaborated that what he meant was that Attorney Jacobs filed the motions in December even though Defendant requested them in September. *See id.* By filing them three months after he requested them, Defendant asserted, Attorney Jacobs "effectively waiv[ed] Defendant's] constitutional right to a speedy trial." *Id.* at PageID.525. Defendant continued that Attorney Jacobs did not file the motions with the same legal theory that Defendant directed. *See id.* at PageID.525–26. Attorney Jacobs responded that he believed the motions he filed responded to the conclusions that he and Defendant reached regarding the motions' underlying issues. *See id.* at PageID.526. This Court ordered the two motions withdrawn at Defendant's request. *See id.*

After some colloquy regarding Defendant's other *pro se* motions, *see id.* at PageID.526–36, Defendant asserted that he believed Attorney Jacobs waited to show Defendant the videos as part of a conspiracy to allow the Government to bring a superseding indictment against him, which he also argued violated his right to a speedy trial. *See id.* at PageID.535–36. Defendant repeated that Attorney Jacobs "did not file what [he] asked [him] to file." *Id.* at PageID.538.

Defendant elaborated that he thought Attorney Jacobs had to file everything that Defendant demanded using the arguments that Defendant demanded, and that Attorney Jacobs could not make routine scheduling decisions without Defendant's consent. *See id.* at PageID.538–40. This Court reminded Defendant that he made substantially similar arguments to get his first appointed attorney withdrawn from his case. *See id.* at PageID.540. Defendant began to yell that his attorneys should not be able to make any decisions without his permission, that any such decisions violate his

constitutional rights, and that leaving Attorney Jacobs as standby counsel also violated his constitutional rights. *See id.* at PageID.540–42. This Court reminded Defendant that he need not consult with Attorney Jacobs, who would "simply be available." *See id.* at PageID.542. In a calmer tone, Defendant again requested transfer to another jail, and this Court again informed him that the Marshals Service determines his detention location before ending the hearing. *See id.* at PageID.543–44.

Twelve days after the hearing, this Court granted Attorney Jacobs's motion to withdraw thereby granting Defendant's request to proceed *pro se*, but with Attorney Jacobs as standby counsel as indicated during the hearing. *See* ECF No. 41. In the order, this Court explained that (1) "[s]tandby counsel cannot assume control of [Defendant's] case" without Defendant's consent; (2) Defendant will "be allowed to control the organization and content of his defense"; (3) Defendant could "use the advice of standby counsel as he . . . sees fit"; and (4) there is "no absolute bar on standby counsel's unsolicited participation of a pro se defendant's case before the jury." *Id.*

## E.

In May 2021, this Court held a hearing on Defendant's four pending motions. *See* Tr., ECF No. 65. During the hearing, this Court allowed Defendant to file supplemental briefing to support his speedy-trial motion, which he filed the same day. *See* ECF No. 53. This Court also granted Defendant's request to withdraw the motion to suppress. At the hearing, Defendant also filed a motion to dismiss the indictment. ECF No. 54. Finally, Defendant acknowledged the first superseding indictment. ECF No. 55.

In June 2021, Defendant filed another motion for jail transfer, ECF No. 58, three new motions to dismiss the first superseding indictment for alleged defects, ECF Nos. 59–61, and a motion to reinstate the motion to suppress that was withdrawn at his request, ECF No. 62 (seeking

to reinstate ECF No. 23). The Government responded to all the motions, except the motion for transfer and the motion to reinstate. ECF Nos. 57; 58; 62; 63.

In July 2021, this Court docketed the transcript of the May 2021 hearing and scheduled a hearing for Defendant's June 2021 motions, to take place on August 18, 2021. ECF Nos. 65; 66.

Two weeks before the hearing, Defendant filed a motion to subpoena two witnesses for the hearing. ECF No. 67. Two days later, this Court issued an order explaining that it would decide Defendant's motions on the papers without a hearing, canceled the August 18 hearing, and denied Defendant's motion for subpoenas as moot. ECF No. 68. Six days later, the undersigned issued a written opinion denying all Defendant's pending motions. *United States v. White*, No. 1:20-CR-20416, 2021 WL 3560887, at *2 (E.D. Mich. Aug. 12, 2021) (denying ECF Nos. 37; 39; 54; 58; 59; 60; 61; 62), *in* ECF No. 69.

Four days later, Defendant filed an affidavit from his now-girlfriend, Yolanda Jones, regarding Attorney Jacobs. *See* ECF No. 71. Specifically, Ms. Jones swore under penalty of perjury that she "called attorney Stevens J. Jacobs for [Defendant] numerous times and left messages on his voice mail and spoke with his secretary and told them that [Defendant] did not want attorney Stevens Jacobs as his attorney anymore and that he was fired." *Id.* at PageID.363. Ms. Jones elaborated that Attorney Jacobs "would not return [Defendant's] letters or return his phone calls and he wouldn't give [Defendant] the videos from his case." *Id.*

In November 2021, Defendant filed his own statement to the same effect. *See generally* ECF No. 78 at PageID.378–85 (indicating that he had his "[c]hild's mother Rhonda Vaughn and [his] Girlfriend Yolanda Jones call Stevens Jacob's office and request the air survailance [sic] videos").

- 13 -

On December 9, 2021, this Court granted the parties' stipulated adjournment of the scheduling order, providing approximately three months for the Probation Department to complete a pre-guilty-plea presentence investigation report for Defendant. ECF No. 79.

**F.**

On December 14, 2021, Defendant filed a motion requesting recusal of the undersigned. Specifically, Defendant asserted that the undersigned is "bias and its [sic] a conflict of intrest [sic] being that [he] personally allowed and particsipated [sic] in the violation of [Defendant's] constitutional right to due process." ECF No. 80 at PageID.394. Without citing any specific legal authority, Defendant elaborated with a "list of the [seven] violations":

> (1) you, the AUSA Ann Nee, and Attorney Stevens Jacobs violated Federal Rule of Criminal Procedure 43 and Constitutional Right to be present for every stage of trial (Due Process Right) <u>US</u> v. <u>Gabrion</u> 648 F.3d 309 (6th Cir. 2011) US v Gagnon 470 U.S. 522, 526, 105 S.Ct 1482, 84 L.Ed 2d 486 (1985) Snyder v. Massachusette, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed 674 (1934) when you held a pre-trial conference without my knowledge or presence and it wasn't recorded which violated the Court Reporters Act, 28 U.S.C § 753 . . . .
> (2) you allow the government to submit a photo shopped picture from the video of the alledged guns on the ground that has not been authenicated that you knew was false and not apart of discovery.
> (3) You refused to supeona two material witnesses, Rhonda Vaughn and Yolanda Jones, who would testified favorably for me provided that Attorney Steven Jacobs was not working as my attorney when he filed the two frivilous motions in the Court causing my right to a speedy trial to be violated. You suppressed favorable testimony from my witnesses in violation of <u>Brady!</u>
> (4) You refused to grant me a copy of the grand jury transcripts when the grand jury transcripts are not sealed, another violation of <u>Brady</u> V <u>Maryland</u>.
> (5) Refused to have me transferred to a facility where I could have adequate meaningful access to the courts, when I swore in an affidavit and through stand by attorney Stevens Jacobs that I couldn't respond to the AUSA's briefs because I was in segregation and on law library Kiosk restriction. In violation of <u>Bounds</u> v. <u>Smith</u> (see attached).
> (6) You stated on the record that I am not attorney Stevens Jacobs employer meaning that he don't work for me he works for the government because the government pays his check.
> (7) You left Attorney Stevens Jacobs on my case as stand by counsel and told me to use him to do the things I want and need done and he refuses to file appeals on

> the venue decision and to file motion to suppress based on the warrant being overly
> broad, again violating my access to the courts' rights.

ECF No. 80 at PageID.394–97 (unaltered). Defendant concluded that this list "show[ed] that [the

undersigned] can not [sic] hear or decide this case without [his] personal bias or conflict of interest

because [he] directly violated [Defendant's] rights [himself]." *Id.* at PageID.397. Defendant added

that if the motion is denied, he "will write a letter requesting a complete investigation to the Six

Circuit Office of the Circuit Executive and to the United States Attorney General's Office

requesting a complete investigation into this whole case." *Id.* at PageID.397.

      The motion to recuse was denied. *See United States v. White*, No. 1:20-CR-20416, 2022

WL 265944, at *5–10 (E.D. Mich. Jan. 27, 2022). Specifically, the Motion was denied under 28

U.S.C. § 144 for lack of a certificate of good faith and for not alleging extrajudicial bias. *Id.* at *6.

The Motion was separately denied under 28 U.S.C. § 455 for not alleging extrajudicial bias, *id.* at

*7–8, and for being untimely, *id.* at *9 ("Defendant filed his Motion for Recusal against the

undersigned more than seven months after the alleged conduct. And, though filed on the docket

December 14, 2021, his Affidavit is dated twenty-five days after Magistrate Judge Morris [denied

bail]."). The same order also denied a motion to dismiss the indictment for lack of subject-matter

jurisdiction Defendant filed on December 16, 2021. *Id.* at *10–14 ("[B]oth of Defendant's

arguments are contrary to well-established law.").

### G.

      On January 26, 2022, Attorney Jacobs filed his second motion to withdraw as Defendant's

standby counsel—the third that Defendant's counsel have filed in his case. *See* ECF No. 87. In the

motion, Attorney Jacobs explains that he (1) filed the motions Defendant requested; (2) received

a February 10, 2020 letter from Defendant demanding Jacobs's removal from Defendant's case;

(3) met with Defendant "at the Saginaw County Jail on twelve occasions"; (4) "has provided copies

of all written Discovery and reviewed the video evidence with Defendant"; (5) stipulated with the Government to an investigation of the applicability of "Armed Career Criminal Guidelines," which found the provision applies to Defendant; (6) believes Defendant waived his attorney-client privilege by filing "a written request for investigation from the Attorney Grievance Commission"; and (7) was advised by the "Federal Defenders Office . . . to file the Motion to Withdraw." *See id.* at PageID.448–50.

On February 9, 2022, this Court held a hearing on Attorney Jacobs's second Motion to Withdraw, the primary reason for this Opinion and Order. *See* ECF No. 91. At the hearing, Attorney Jacobs explained that the "Federal Defender's Office" advised him to file a motion to withdraw from Defendant's case, and he added that the State Bar of Michigan sent him an ethics opinion indicating that his withdrawal would not have a "material adverse effect to the interest of the client." *See id.* at PageID.505–06.

This Court invited Attorney Jacobs to outline his representation of Defendant. *Id.* at PageID.506. Attorney Jacobs stated that even though he "filed a couple motions for [Defendant] when he asserted that he didn't have the ability to file the motions himself," Defendant later "filed motions himself" while represented. *Id.* at PageID.506. Attorney Jacobs elaborated that he "dealt with [Defendant] regarding a stipulation and order for a pre-plea presentence investigation report," that he "met with [Defendant] on more than one occasion to answer his questions," and that he "requested information as far as a witness list and civilian clothing." *Id.* at PageID.506–07.

This Court then noted that Attorney Jacobs was seemingly characterizing Defendant's behavior during the course of their relationship as "interfering with [counsel's] ability to assist him." *Id.* at PageID.507. Attorney Jacobs acknowledged as much. *Id.* But Attorney Jacobs would not details how Defendant had intentionally impeded standby counsel's representation because,

according to the State Bar of Michigan, doing so could waive the attorney-client privilege and therefore violate his ethical obligation to his client. *See id.* at PageID.507. Instead, this Court directly asked Attorney Jacobs, "Has [Defendant] assisted you in your capacity as his attorney to effectively represent him, even as standby counsel?" *Id.* Attorney Jacobs replied, "It's been more of an adversarial relationship, Your Honor. By that [I mean] inconsistent requests; one day wanting one thing, next day wanting a different thing." *Id.*

Next, this Court invited Defendant's perspective. Referring to all the issues addressed in the prior hearings, Defendant stated, "I don't want him to represent me. Because he's violated my constitutional rights. He's held hearings off the record with the Government. He's withheld evidence from me for over 10 months." *Id.* at PageID.509. Consistent with the above-mentioned record, Attorney Jacobs "contest[ed] his allegations." *Id.* at PageID.510.

This Court then focused on the issue of whether it would be appropriate to remove Attorney Jacobs from Defendant's case. *See id.* at PageID.510. First, this Court again cautioned Defendant:

> If I'm satisfied that the job that Mr. Jacobs's done has been to effectively provide you legal assistance, and that the primary impediment to his being able to do that successfully has been your interruption in that relationship, you will have waived your right to legal counsel, and I will not have an obligation to appoint a third attorney. I want to be sure you understand that.

*Id.* at PageID.510. Defendant replied, "Yes, I do." *Id.*

Then this Court conducted another *Faretta* inquiry. *See id.* at PageID.510–11. After the *Faretta* inquiry, this Court again asked Defendant if he is sure that he no longer wants standby counsel. *Id.* at PageID.511. Defendant repeated it four more times: "I don't want to proceed with him," *id.*, "I didn't want him, and you still insisted that he be on my case," *id.* at PageID.512, "I don't want him. That's the final issue," *id.*, and "You asking me, Do I understand? Yes, I understand, and I want him off my case," *id.*

- 17 -

Then this Court sought to determine whether Defendant was aware of his possible penalty and Guidelines range. The Government indicated that it had multiple "unofficial discussions" with Defendant and his standby counsel to discuss that Defendant was facing the applicability of the armed-career-criminal enhancement, a 15-year mandatory minimum, and three years' supervised release. *See id.* at PageID.514. Defendant acknowledged that he understood. *See id.* at PageID.513 ("The only recommendation I ever received from the government's office was plea to Count One, and I'll be sentenced to a mandatory 15 years, and I think it was three more years added on. That's what I was told.").

This Court then again admonished Defendant, again. *See id.* at PageID.515. Specifically, this Court advised Defendant that he is "not trained counsel," suggested that he "proceed with counsel," and then "urge[d Defendant] to continue to use [Attorney Jacobs's] assistance in the case." *Id.*

This Court informed Defendant that another attorney would not be appointed because "the primary impediment to [his] problems with counsel are not the services that they are furnishing." *Id.* This Court told Defendant that the reason Attorney Jacobs filed the motions the way he did is because "[h]e is entitled, indeed obligated, to exercise his professional discipline in certain circumstances." *Id.* at PageID.516. This Court also explained that Attorney Jacobs "followed up the best he can," that "he filed motions," and that the motions "have, in fact, been addressed." *Id.* at PageID.516–17. This Court then reminded Defendant that he raised the same arguments against Attorney Sabbota. *Id.* at PageID.517.

Defendant then reiterated his argument that Attorney Jacobs violated Defendant's constitutional rights by filing two motions at Defendant's direction after Defendant fired him. *See id.* at PageID.518. Although Defendant then began repeatedly interrupting this Court and banging

his belly chain on the desk, this Court asked Defendant—for the third time—if he was sure that he was "aware of . . . the risks [he] face[d] in proceeding by representing himself." *Id.* at PageID.518. And for the third time, Defendant replied, "Yes, I do." *Id.*

Ultimately, this Court concluded not only that it had sufficiently admonished Defendant, but also that Defendant had waived his right to counsel "by [his] behavior and activity in interfering with [Attorney Jacobs's] assistance to represent [him]." *Id.* at PageID.518–19. At the end of the hearing, Defendant indicated his intent to "file a motion to get an investigator." *Id.* at PageID.519.

## H.

As earlier noted, on March 4, 2022, Defendant filed a motion for a special investigator. ECF No. 93. According to Defendant he "need[s] a special investigator to gather evidence in [his] defense as [he] is detained in the Saginaw County Jail and can't gather evidence himself." *Id.* at PageID.600. Defendant elaborates that he "needs the assistance of a Special Investigator to seek expert witness testimony to challenge the authenticity of the video survailance [sic] videos, thermal imaging expert testimony and to complete [his] defense." *Id.* at PageID.601. Defendant concludes that "deny[ing] [him] access to a special investigator would effectively impede on [his] ability to challenge and raise a defense againt [sic] the charges he's facing and be a manifest injustice and call into question the fairness and integrity of this Court." *Id.*

The same day, Defendant filed a motion for a legal tablet. ECF No. 94. Specifically, he asserts that he "does not have Federal Rules of Criminal Procedure or Federal rules of Evidence" at the Saginaw County Jail. *Id.* at PageID.603.  Defendant alleges that "[a] legal tablet is needed to properly prepair [sic] [his] defense." *Id.* at PageID.604. Defendant continues that "[t]here are videos in [his] discovery that [he] wants and needs to study and the Saginaw County Jail doesn't

have the means to do that." *Id.* Defendant concludes that this Court has the "power to issue a legal tablet which will provide the tools for [him] to properly prepare his defense." *Id.* (cleaned up).

## II.

At issue in this Order are three motions, which will be addressed in turn as follows: Attorney Jacobs's Motion to Withdraw, *supra* Section II.A; Defendant's Motion for a Legal Tablet, *supra* Section II.B; Defendant's Motion for a Special Investigator, *supra* Section II.C.

## A.

Attorney Stevens Jacobs filed a motion to withdraw as Defendant's standby counsel. ECF No. 87.

The Sixth Amendment affords the right to those accused in all criminal prosecutions to have the assistance of counsel for their defense.[2] U.S. CONST. amend. VI.

The Supreme Court has recognized that criminal defendants have the constitutional right to defend themselves at trial. *Faretta v. California*, 422 U.S. 806, 814–16 (1975); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) (holding that the Sixth Amendment right to counsel implicitly includes the "correlative right to dispense with a lawyer's help").

A defendant may lose the right to counsel in three circumstances: first, if there is a knowing and voluntary waiver of the right; second, the defendant may forfeit the right to counsel because

---

[2] The right to counsel has a rich history. *See, e.g.*, Kevan F. Jacobson, *Pandora, We Have Found You—And You Came from Guantanamo Bay*, 9 BELMONT L. REV. 1, 32 (2021) (noting right to counsel for communists in the 1950s); Keagan Potts, Note, *Possible Reliance: Protecting Legally Innocent* Johnson *Claimants*, 119 MICH. L. REV. 425, 439 n.99 (2020) (noting state's burden "to show that [habeas petitioners were] advised of and legitimately waived [their] right" to counsel); William E. Thro, *No Angels in Academe: Ending the Constitutional Deference to Public Higher Education*, 5 BELMONT L. REV. 27, 39–40 (2018) (noting right to counsel in public-university disciplinary hearings); Amy L. Moore, *The Due Process Conundrum: Using* Mathews v. Eldridge *As a Standard for Private Hospitals Under the Health Care Quality Improvement Act*, 2 BELMONT L. REV. 1, 28 n.168 (2015) (noting right to counsel in administrative hearings).

of extremely dilatory conduct; third, waiver may occur by the defendant's conduct. *See United States v. Salemo*, 61 F.3d 214 (3rd Cir. 1995); *see also* Emily Bretz, Note, *Don't Answer the Door:* Montejo v. Louisiana *Relaxes Police Restrictions for Questioning Non-Custodial Defendants*, 109 MICH. L. REV. 221, 231–35 (2010) (detailing the analyses of the waiver of the right to counsel).

**i.**

Defendant voluntarily, knowingly, and intelligently waived his right to counsel at the hearings on Attorney Jacobs's first motion to withdraw. *See* discussion *supra* Sections I.C, I.D.

The Supreme Court has scrupulously required that a defendant's waiver of counsel be both voluntary and a "knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). Whether a defendant has voluntarily, knowingly, and intelligently relinquished the right to counsel "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In general, however, the Supreme Court has required that "courts indulge in every reasonable presumption against waiver." *Brewer v. Williams*, 430 U.S. 387, 404 (1977).

As the Sixth Circuit most recently recognized, a district court's *Faretta* inquiry is constitutionally sufficient when the court at least addresses the following three "questions that were 'drawn from, or substantially similar to,' the model inquiry questions": (1) "the defendant's familiarity with the law," (2) "the gravity of the charges," and (3) "the dangers of self-representation." *United States v. Johnson*, 24 F.4th 590, 602 (6th Cir. 2022) (quoting *United States v. Bankston*, 820 F.3d 215, 227 (6th Cir. 2016)).

During the first part of the hearing on Attorney Jacobs's first motion to withdraw, On March 10, 2021, this Court entertained Defendant's allegations that Attorney Jacobs was not

providing adequate representation. Defendant had made repeated assertions that Attorney Jacobs was not allowing Defendant to see evidence, was not filing motions that Defendant demanded, and was filing motions that Defendant did not authorize. This Court engaged in elaborate discussion seeking to corroborate Defendant's allegations.

Defendant repeatedly demanded Attorney Jacobs's removal during that hearing. Moreover, Defendant presented his theory of how the Government's search warrant was invalid. He also argued the merits of his motions and raised new motions during the hearing, and he fully expressed his understanding of the gravity of his charges and the intricacies of his guideline range. In the end, engaging in a presumption against waiver, this Court extended the motion hearing for a second day to monitor the parties' interactions more closely and review the record carefully.

During the second part of the hearing on Attorney Jacobs's first motion to withdraw, on March 25, 2021, Defendant completed his waiver of his right to counsel. Attorney Jacobs had brought the videos to Defendant—which he opted not to view in total—and filed the motions that Defendant had demanded. Yet at the hearing Defendant repeatedly insisted that Attorney Jacobs be removed from his case. This was confusing, as the only issues between the parties were the videos Defendant was able to view and the motions that he voluntarily withdrew and then refiled.

To engage for the second time in a presumption against waiver, and before granting Defendant's second appointed attorney's second motion to withdraw, this Court conducted a *Faretta* inquiry. Defendant insisted not only that he was familiar with the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, but also that he was aware of the risks of representing himself without the background, education, and experience of his appointed attorneys. He also said that he consulted Attorney Jacobs about the risks of self-representation. In

this way, Defendant had researched self-representation and came to court that day prepared to procced *pro se*.

Ultimately, this Court allowed Defendant to represent himself because during the two-day hearing he: (1) expressed his familiarity with the law, (2) detailed his understanding of the gravity of his charges, (3) demonstrated his understanding of the dangers of self-representation, (4) showed his ability to draft well-reasoned *pro se* motions, (5) exercised his ability to argue the merits of motions in court, (6) modeled his ability to raise and argue new motions on the spot during a hearing, (7) said at least four times that he wanted to represent himself and that he understood the risks.

Yet in the interest of protecting Defendant's constitutional right to counsel, this Court engaged in two presumptions against waiver, split the hearing into two parts to let the parties reflect on their decisions, directed Attorney Jacobs to work with Defendant, and then directed Attorney Jacobs to remain on Defendant's case to ease his filing burden and to have someone with formal legal training provide services that fell within the realm of standby counsel. To that end, this Court explained in detail to Defendant the scope of standby counsel's duties.

Yet Defendant apparently continued to impede counsel's representation, leading to a third motion to withdraw at his demand and a fourth hearing on his right to counsel.

**ii.**

Defendant also waived his right to counsel voluntarily, knowingly, and intelligently—and separately by his conduct—at the February 9, 2022 hearing on Attorney Jacobs's second motion to withdraw. *See supra* Section I.G.

A defendant can be deemed to have waived the right to counsel by refusing the assistance of appointed counsel and persisting in a demand for different counsel. *See Wiggins v. Procunier*,

753 F.2d 1318, 1320 (5th Cir. 1985). But a defendant will not normally be deemed to have waived the right to counsel by reluctantly agreeing to proceed *pro se* when the circumstances indicate there is no real choice. *See United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 755–56 (2d Cir. 1975). Such circumstances arise when the defendant exhibits an "apparent reluctance to proceed without counsel . . . alert[ing] the court to the need to inform the defendant of the pitfalls and technicalities of [proceeding *pro se*]." *See United States v. Salemo*, 61 F.3d 214, 221 (3d Cir. 1995).

A defendant might also lose the right to counsel by firing multiple attorneys. *United States v. Coles*, 695 F.3d 559, 560–62 (6th Cir. 2012). Indeed, the Sixth Circuit has held that defendants knowingly, intelligently, and voluntarily waive the right to counsel when they demand multiple counsel's dismissal and insist on proceeding *pro se*. *United States v. Green*, 388 F.3d 918, 921–22 (6th Cir. 2004) (holding that a defendant's "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel function[s] as a valid waiver of the right to counsel").

In cases in which the Sixth Circuit has affirmed a district court's determination that a defendant waived the right to counsel by conduct, the district court has made the basis for the waiver explicit. *See, e.g.*, *United States v. Pittman*, 816 F.3d 419, 422 (6th Cir. 2016) (determining at the hearing that "Pittman had 'effectively waived his right to counsel' by 'refus[ing] to cooperate with five lawyers'"); *Coles*, 695 F.3d at 561–62 (finding that the defendant exercised his right to represent himself when the defendant requested another attorney after the district court had previously warned the defendant that this was his last appointed attorney and that if he sought another attorney, then he would proceed *pro se*).

This is not a case in which the defendant reluctantly agreed to represent himself. On the contrary, over several years, Defendant has repeatedly emphasized to his friends, his family, two

- 24 -

attorneys, and this Court that he wanted to represent himself. The sole reason for Attorney Jacobs being removed from Defendant's case was Defendant's repeated threats and demands for him to file a motion to withdraw. To that end, Defendant sent multiple letters—and had his child's mother and girlfriend make phone calls and send sworn affidavits—telling this Court that he fired Attorney Jacobs and that Defendant would no longer work with him. And Defendant made substantially similar demands to Attorney Sabbota until he also filed a motion to withdraw. Yet Attorney Jacobs continued to subject himself to Defendant's threats to effectuate his duty to effectively represent his client—even reaching out to the Federal Defender's Office and the State Bar of Michigan for advice and consulting ethics opinions. This Court twice invoked the presumption against Defendant's waiver of his right to counsel. Yet Defendant repeatedly insisted, "I don't want him to represent me," "I don't want him. That's the final issue," "You asking me, Do I understand? Yes, I understand, and I want him off my case," and "I'd like to represent myself." In the end, his wish was granted.

This is not Defendant's first rodeo. During Defendant's second *Faretta* inquiry, he stated that his expertise with the Federal Rules comes from 24 years' experience in prison. And as he mentioned, he has been dealing with the criminal justice system since he was a juvenile. This *does not* suggest that a criminal defendant's experience with the criminal justice system weakens his right to counsel in later proceedings. The point is that Defendant's repeated invocation of terms like "ineffective" to characterize the motions that he directed appointed counsel to file suggests that he is simply attempting to create issues that he can bring on appeal if he is convicted and sentenced. *See* Jona Goldschmidt, *Judging the Effectiveness of Standby Counsel: Are They Phone Psychics? Theatrical Understudies? Or Both?*, 24 S. Cal. Rev. L. & Soc. Just. 133, 170 (2015) (collecting cases to note that though "[m]ost courts have found no constitutional right to standby

counsel, much less effective assistance of standby counsel," some "consider the claim and apply the *Strickland* effectiveness test anyway").

Indeed, Defendant has repeatedly contradicted himself by ordering Attorney Jacobs to file motions that Defendant later said he did not request. And to the extent Defendant *might* mean that he did not tell Attorney Jacobs to file those motions with the same legal theory, he misunderstands the ethical obligations of a licensed attorney and misconstrues an attorney's authority in representing her client.

Attorneys have the authority to schedule matters as necessary and the authority to decide procedural matters. For example, attorneys may call witnesses, present evidence, hire experts, grant extensions of time to opposing counsel, and determine and execute strategies and tactics for trial. By contrast, clients have authority over the substance of their rights—decisions that might ultimately affect the outcome of their case. For example, the client has authority over bringing a claim, settling a case, dismissing with prejudice, stipulating to matters that would eliminate an essential element of the claim or defense, deciding whether to testify in a criminal case, choosing a bench or jury trial, and stipulating to binding arbitration.

Granted, the duties of standby counsel are hazier than those for lead counsel. *See* Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In the Twilight Zone of the Criminal Justice System*, 75 N.Y.U. L. REV. 676, 676 (2000) (concluding that "a standby counsel must act as a shadow counsel, preparing the case as full as if she were the lead counsel"). But in most cases the duties of standby counsel are even more onerous than those of lead counsel. *Id.* at 679 ("Properly conceived, the obligation of standby counsel may in fact be more onerous than the more straightforward job of representing an accused."). Yet standby counsel's ethical obligations persist with equal, if not more, force.

- 26 -

Defendant waived his right to counsel through his misconduct toward his appointed attorneys. He refused the assistance of counsel by repeatedly demanding new counsel, refusing to work with them, filing official grievances, and sending letters from him, family, and friends firing counsel. This Court granting Defendant's demand to proceed *pro se* not only because he was willing and able, but also because of his misconduct in and out of three hearings on that exact issue.

During the hearings when this Court was entertaining the motions to dismiss, Defendant alarmingly banged his belly chain on the desk multiple times, yelled at counsel, and repeatedly interrupted this Court and spoke out of turn. If all that was not enough, Defendant continues to insist that he is entitled to an attorney that has no authority to decide which legal theories to use when making an argument to the court. Thus, Defendant has waived his right to counsel by conduct. *See United States v. Pittman*, 816 F.3d 419, 426 (6th Cir. 2016) ("[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a valid waiver of counsel" (quoting *United States v. Green*, 388 F.3d 918, 922 (6th Cir. 2004)); *see also United States v. Johnson*, 24 F.4th 590, 610–11 (6th Cir. 2022) (Siler, J., dissenting) (indicating that a defendants might waive their right to counsel through conduct that places their attorney or others in apprehension of physical assault).

For these reasons, this Court found that Defendant waived his right to counsel three times. He waived his right to counsel voluntarily, knowingly, and intelligently at the two hearings on Attorney Jacobs's first motion to withdraw. He waived his right to counsel voluntarily, knowingly, and intelligently at the hearing on Attorney Jacobs's second motion to withdraw. And he waived his right to counsel by conduct before and during the hearing on Attorney Jacobs's second motion to withdraw. Consequently, Attorney Jacobs's Motion to Withdraw will be granted.

**B.**

Defendant has filed a motion for a legal tablet. ECF No. 94. Defendant points to no legal authority established by Congress or the United States Constitution that empowers this Court "to issue a legal tablet." *See id.* at PageID.604. Yet in Defendant's interest, this Court will construe Defendant's Motion as a request for special services under 18 U.S.C. § 3006A(e).

When necessary to adequate representation, this Court may authorize "Services Other Than Counsel" under 18 U.S.C. § 3006A(e). Section 3006A(e)(1) provides in full:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate judge if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1). "A district court may deny a motion under this section if it finds that the requested services are not necessary for adequate representation." *United States v. Osoba*, 213 F.3d 913, 916 (6th Cir. 2000).

Defendant's request for a legal tablet will be denied. Defendant has not demonstrated the need for such a request, as he has not furnished any evidence that his facility does not have copies of the Federal Rules of Evidence or Criminal Procedure—both with which Defendant acknowledged he is familiar during his March 25, 2021 hearing. Defendant's request is particularly confusing given that he has already filed 17 *pro se* motions. *See* ECF Nos. 37–40; 54; 58–62; 67; 70; 80–82; 93; 94. Defendant's request for a legal tablet rests on his purported "want[] and need[]" to study three videos of his alleged involvement in the burglary, and later sale, of 30 firearms from a federally licensed firearms dealer. *See* ECF No. 94 at PageID.604. But Defendant had that opportunity 12 times when Attorney Jacobs visited him in jail specifically to discuss the three

videos. Indeed, Attorney Jacobs—who Defendant repeatedly threatened to sue—made extensive notes on the videos, which he discussed with Defendant *ad nauseum*. Moreover, Defendant has watched the bulk of the videos. And on at least one occasion, he opted *not* to view two of the videos. Yet now he requests tax dollars for an iPad to watch that which he has already viewed or refused to view.

To the extent Defendant's request might inadvertently invoke a purported right to a law library, it should also be denied. *See United States v. Kincaide*, 145 F.3d 771, 778 (6th Cir. 1998) ("We have held on several occasions that 'the state does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves.'" (first quoting *United States v. Smith*, 907 F.2d 42, 45 (6th Cir. 1990); and then citing *United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990))).

Finally, to the extent Defendant's request might inadvertently invoke his right to pretrial discovery, *see* FED. R. CRIM. P. 16(a)(1)(B) (requiring disclosure of recorded statement by defendant), it should be denied. Here, the Government disclosed the videos to Defendant, *see* ECF No. 92 at PageID.575, and Defendant had several occasions to view the videos but opted out, *see, e.g.*, *id.* at PageID.559.

For these reasons, Defendant's Motion for a Legal Tablet will be denied.

### C.

Defendant has filed a motion for a special investigator. ECF No. 93.

When necessary to adequate representation, this Court may authorize the "Services Other Than Counsel" under 18 U.S.C. § 3006A(e). Under § 3006A(e), the determination of whether an expert's assistance is necessary for an adequate defense is generally left within the discretion of the trial court. *Osoba*, 213 F.3d at 916.

Some courts compel an indigent criminal defendant to prove only that reasonably competent paid counsel would have retained the expert's services and that the defendant was clearly prejudiced by the lack of those services. *See United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996). The Third Circuit has found that in appropriate cases a court may order that funds be provided to assist an indigent defendant during sentencing, but that in order to find that such funds are "necessary" the court must "'satisfy itself that a defendant may have a plausible defense.'" *See United States v. Roman*, 121 F.3d 136, 143 (3rd Cir.1997) (quoting *United States v. Alden*, 767 F.2d 314, 318 (7th Cir. 1984)). More strictly, the Eight Circuit has held that the decision to deny funds under § 3006A(e)(1) is left to the sound discretion of the trial judge and is not to be disturbed absent a showing of prejudice. *See United States v. Bercier*, 848 F.2d 917 (8th Cir. 1988).

In the Sixth Circuit, an indigent criminal defendant may not use § 3006A(e)(1) to fund a speculative "fishing expedition." *See United States v. Clark*, 385 F.3d 609, 618 (6th Cir. 2004) (citation omitted) (affirming the district court's decision to deny a request for a psychological expert because the need for such an expert was entirely speculative). Rather, "[a]n indigent defendant may obtain authorization for investigative, expert, or other services under 18 U.S.C. § 3006A(e)(1) upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *United States v. Gilmore*, 282 F.3d 398, 406 (6th Cir. 2002). Under this standard, "[a] district court need not grant an indigent's motion under § 3006A on the off chance that the requested services might turn up something." *Id.*

Defendant has not met his burden under any measure. Defendant has made no attempt to demonstrate whether an attorney would make the same request. Rather, Defendant's prior public

defender, Attorney Jacobs, combed through the videos on several occasions, taking extensive notes and discussing the videos with Defendant, yet the issue of the videos' authenticity never arose. And—other than conclusory speculation—Defendant has not offered even a scintilla of evidence indicating the air-surveillance videos are not authentic. On the contrary, the videos corroborate that Defendant was present at the house where law enforcement recovered the stolen firearms, and that is exactly where law enforcement located him while the videos were being recorded.

For these reasons, Defendant's Motion for a Special Investigator will be denied.

## III.

Accordingly, it is **ORDERED** that Defendant Darious Danyel White has **WAIVED WITHOUT PREJUDICE** his right to court-appointed counsel three times.

Further, it is **ORDERED** that Attorney Stevens Jacobs's Motion to Withdraw as Standby Counsel, ECF No. 87, is **GRANTED**.

Further, it is **ORDERED** that Defendant's Motion for a Special Investigator, ECF No. 93, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion for a Legal Tablet, ECF No. 94, is **DENIED**.


Dated: March 10, 2022                                  s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

- 31 -