UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THE UNITED STATES OF AMERICA,

       Plaintiff,                                 Case No. 1:20-cr-20416

v.                                                 Honorable Thomas L. Ludington
                                                        United States District Judge

DARIOUS DANYEL WHITE,

       Defendant.
_____/

**OPINION AND ORDER GRANTING AND DENYING IN PART GOVERNMENT'S MOTION FOR RE-ADMONISHMENT AND APPOINTMENT OF STANDBY COUNSEL AND APPOINTING THIRD COUNSEL FOR DEFENDANT**

On March 23, 2022, the parties attended their final pretrial conference after the Government filed a motion for re-admonishment of Defendant and appointment of standby counsel. As explained hereafter, the Government's Motion will be granted in part and denied in part, and Defendant will receive his third Government-appointed counsel.

**I.**

Thirty firearms were stolen from Bowman's Outdoor Sports in the middle of the night on August 14, 2020. Although the alleged facts surrounding Defendant Darious Danyel White's indictment come from the parties' filings, they are not clearly outlined in any single pleading. Accordingly, the following explanation is not intended to be dispositive of the alleged facts but to furnish the context necessary to address the Government's Motion.

**A.**

On August 14, 2020, at 3:35 AM, three people burglarized 30 firearms from a federally licensed firearms dealer. *See* ECF No. 1 at PageID.3. At the scene, the police found the temporary

license plate of a Chevrolet Cruze that belonged to Defendant's then-girlfriend,[1] which led law enforcement to her house in Saginaw, Michigan. *Id.* at PageID.3–4. The criminal complaint alleges that, using air surveillance, law-enforcement officers saw Defendant at the house examining and selling firearms. *Id.* at PageID.5. They also located the car from the burglary, along with Defendant, who was wearing shorts and shoes similar to those worn by one of the burglars in a video recording of the burglary. *Id.* at PageID.5–6. Just before noon, Magistrate Judge David R. Grand issued a warrant for Defendant's arrest and seizure of the stolen firearms. *See* ECF No. 24-1 at PageID.98–99. The officers apprehended Defendant outside the house, in which they found 22 of the stolen firearms; in the Chevrolet Cruze, they found a pistol, ammunition, a hammer, and a crowbar with "fresh white paint on the end." ECF No. 1 at PageID.5–6.

After his arrest, Defendant sought to exclude a statement he made at his then-girlfriend's house during his arrest. *See* ECF No. 43 at PageID.186–87 (describing the conversation); *see also* ECF Nos. 23 (attempting to suppress the admission); 38 (same). As Defendant explained in his motion to suppress, while the police searched the house, they "held" him in a van in which he "requested to talk to [his then-girlfriend] . . . before he went to jail." ECF No. 23 at PageID.76. His then-girlfriend asked him, "[W]hy did you take off the license tags on the car at the gun store," and he replied that he "didn't." *Id.* While changing his shorts, which the officers wanted to collect as evidence, Defendant overheard the officers say that they recovered "18 of the 36" stolen firearms. *Id.* at PageID.76–77. Apparently, one of the officers then "reiterated to [Defendant] the importance of recovering the remaining firearms before anyone got hurt." *Id.* at PageID.77. In response, Defendant "excitedly said that the 18 guns in the bag in the yard were all that was taken,

---

[1] The parties' papers provide different names for Defendant's then-girlfriend. Accordingly, her name has been excluded from this Order, as it is not material.

and if anyone said there were more than 18, then the gun store is just trying to get insurance money." *Id.* Defendant "immediately said that he knew that he incriminated himself, but that the guns in the bag were 'on him' and that was all that was taken." *Id.*

Four days later, Criminal Justice Act (CJA) Panel Attorney Jerome Sabbota filed an appearance on Defendant's behalf. *See* ECF No. 6.

Within a month, Defendant "advised Jerome Sabbota" that "he no longer wished Mr. Sabbota to represent him and [that] he will [be] suing him." ECF No. 11 at PageID.28. Citing a breakdown in the attorney-client relationship, Attorney Sabbota filed a motion to withdraw, *id.*, which Magistrate Judge Patricia T. Morris granted before appointing a federal community defender to represent Defendant, ECF No. 13. On September 25, 2020, CJA Attorney Stevens Jacobs filed an appearance to represent Defendant. ECF No. 15.

**B.**

After his arrest in early September 2020, Defendant was indicted for possession of firearms and ammunition by a prohibited person, 18 U.S.C. §§ 922(g)(1), 924(e); possession, concealment, and sale of stolen firearms, *id.* § 922(j); and receipt of firearms and ammunition while under indictment, *id.* § 922(n). *See* ECF No. 12.

Attorney Jacobs filed two motions to withdraw as Defendant's counsel. The first Motion was granted after a two-day hearing demonstrating that Defendant wanted to represent himself and that he was unreasonably impeding Attorney Jacobs's representation, but Attorney Jacobs was appointed as standby counsel. *United States v. White*, No. 1:20-CR-20416, 2022 WL 730638, at *2–6 (E.D. Mich. Mar. 10, 2022). The second Motion was granted after another hearing demonstrating that Defendant wanted to represent himself and that he was unreasonably impeding Attorney Jacobs's representation. *Id.* at *8–15.

On March 10, 2022, Defendant was found to have waived his right to counsel three times. *Id.* at \*15. He waived his right to counsel voluntarily, knowingly, and intelligently at the two hearings on Attorney Jacobs's first motion to withdraw. *Id.* He waived his right to counsel voluntarily, knowingly, and intelligently at the hearing on Attorney Jacobs's second motion to withdraw. *Id.* And he waived his right to counsel by conduct before and during the hearing on Attorney Jacobs's second motion to withdraw. *Id.*

Two weeks later, the Government filed a motion requesting that this Court re-admonish Defendant regarding the risks of self-representation and appoint a second standby counsel to Defendant. ECF No. 97. Two days later, at the final pretrial conference, the Government's Motion was heard, and it will be granted in part and denied in part.

## II.

### A.

The Sixth Amendment affords the right to those accused in all criminal prosecutions to have the assistance of counsel for their defense. U.S. CONST. amend. VI.

The Supreme Court has recognized that criminal defendants have the constitutional right to defend themselves at trial. *Faretta v. California*, 422 U.S. 806, 814–16 (1975); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) (holding that the Sixth Amendment right to counsel implicitly includes the "correlative right to dispense with a lawyer's help").

A defendant may lose the right to counsel in three circumstances: first, if there is a knowing and voluntary waiver of the right; second, the defendant may forfeit the right to counsel because of extremely dilatory conduct; third, waiver may occur by the defendant's conduct. *See United States v. Salemo*, 61 F.3d 214 (3rd Cir. 1995); *see also* Emily Bretz, Note, *Don't Answer the Door:*

Montejo v. Louisiana *Relaxes Police Restrictions for Questioning Non-Custodial Defendants*, 109 MICH. L. REV. 221, 231–35 (2010) (detailing the analyses of the waiver of the right to counsel).

"A trial judge may also terminate self-representation or appoint 'standby counsel'—even over the defendant's objection—if necessary." *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 162 (2000). A defendant's Sixth Amendment right to trial counsel of choice is not violated when the defendant has not retained private counsel. *Cf. Spikes v. Mackie*, 541 F. App'x 637, 651–52 (6th Cir. 2013) (unpublished).

The grand-jury "institution . . . is part of the federal constitutional system," and proceedings before the grand jury are treated with "indispensable secrecy." *United States v. Johnson*, 319 U.S. 503, 513 (1943). Indeed, there is a "long-established policy that grand jury proceedings in federal courts should be kept secret." *Pitch v. United States*, 953 F.3d 1226, 1232 (11th Cir. 2020) (en banc) (first citing *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983); and then citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). Grand-jury secrecy serves "several vital purposes." *Id.* (quoting *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.10 (1979)). "Accordingly, both Congress and the Supreme Court have consistently stood ready to defend the secrecy of the grand jury against any unwarranted intrusions." *Id.*

Victims of crimes have certain rights, including "[t]he right to be reasonably protected from the accused," 18 U.S.C. § 3771(a)(1); and "[t]he right to be treated with fairness and respect for the victim's dignity and privacy," *id.* § 3771(a)(8).

The Government also has an interest in protecting the privacy and safety of all civilian witnesses, and in minimizing the potential for intimidation, undue pressure, or any obstruction of justice with respect to such witnesses. *See Perlman v. DOJ*, 312 F.3d 100, 106 (2d Cir. 2002) (holding that witnesses "possess strong privacy interests, because being identified as part of a law

enforcement investigation could subject them to 'embarrassment and harassment,' especially if 'the material in question demonstrates or suggests they had at one time been subject to criminal investigation.'" (quoting *Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999))), *judgment vacated on other grounds by* 541 U.S. 970 (2004); *see also United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (noting that in deciding whether good cause exists for a protective order the court should consider "the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security." (quoting *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015))).

**B.**

Defendant waived his right to counsel three times. *United States v. White*, No. 1:20-CR-20416, 2022 WL 730638, at *15 (E.D. Mich. Mar. 10, 2022).

Then the Government filed a motion requesting that this Court re-admonish Defendant regarding self-representation and issue him a third Government-appointed attorney, which would be his second standby counsel. ECF No. 97. The Government has requested standby counsel for four reasons: (1) "to better ensure proper treatment of grand jury materials"; (2) "to provide greater protection for victims and witnesses"; (3) "to facilitate more fulsome discovery"; and (4) "to assist with case negotiations, trial preparation, and trial." ECF No. 97 at PageID.644.

Two days later, the Motion was heard during a previously scheduled final pretrial conference. At the hearing, Defendant was again informed of the benefits of counsel, yet Defendant insisted on representing himself. The Government noted its concern for providing additional grand-jury materials directly to Defendant without protection for the victims, the grand jury, and potential witnesses. *See also* ECF No. 97 at PageID.647–48. The Government also said it would not disclose the video discovery directly to Defendant due to the jail's limited resources

and unsecure environment. The Government suggested that standby counsel could assist Defendant in viewing the evidence, negotiating, and preparing for and participating in the trial.

Despite this Court's previous findings, the Government has demonstrated a need to appoint a third attorney to Defendant. The Government must disclose grand-jury testimony without jeopardizing any victims, witnesses, or members of the grand jury who indicted Defendant. New counsel will aid in that endeavor. Moreover, if Defendant wishes his new counsel to be standby counsel or, alternatively, to represent himself, he may make that decision after consulting his new attorney.

For these reasons, the Federal Community Defender Office will be directed to appoint a new attorney to represent Defendant.

## C.

On March 10, 2020, the Governor of Michigan declared a State of Emergency due to the severe risk that the novel coronavirus ("COVID-19") pandemic posed to the public. *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, No. 1:19-CV-11009, 2022 WL 193598, at *4 (E.D. Mich. Jan. 21, 2022) (citing Exec. Order No. 2020-04 (Mar. 10, 2020)). On March 13, 2020, the United States District Court for the Eastern District of Michigan postponed criminal trials due to the courts' reduced ability to obtain an adequate spectrum of jurors or maintain a safe environment for counsel and court staff. *See* E.D. Mich. Admin. Order No. 20-AO-021 (effective Mar. 16, 2020)). The Administrative Order was extended several more times. *See* E.D. Mich. Admin. Order 21-AO-023 (effective Sept. 22, 2021); E.D. Mich. Admin. Order 21-AO-012 (effective June 24, 2021); E.D. Mich. Admin. Order 21-AO-009 (effective May 3, 2021); E.D. Mich. Admin. Order No. 21-AO-006 (effective Mar. 26, 2021); E.D. Mich. Admin. Order No. 20-AO-059 (effective Dec. 21, 2020); E.D. Mich. Admin. Order 20-AO-038R (effective Sept. 8, 2020).

This Court has recently been conducting in-person hearings and jury trials. But this Court has had to prioritize criminal cases by age and bond status. Adjourning Defendant's trial therefore outweighs the best interest of the public and Defendant's right to a speedy trial under 18 U.S.C. § 3161(h)(7)(A).

For these reasons, Defendant's criminal trial will be adjourned.

### III.

Accordingly, it is **ORDERED** Government's Motion for Re-admonishment of Defendant and Appointment of Standby Counsel, ECF No. 97, is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted in re-admonishing Defendant and denied in appointing him with standby counsel.

Further, it is **ORDERED** that the Federal Community Defender Office is **DIRECTED** to appoint a federal community defender to Defendant as lead counsel forthwith. New counsel must not be Jerome Sabbota or Stevens Jacobs.

Further, it is **ORDERED** that the time from April 12, 2022, to May 17, 2022, shall be **EXCLUDED** under 18 U.S.C. § 3161(h)(7)(A) for the purpose of computing time limits in which the trial must be commenced under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1).

Further, it is **ORDERED** that the Scheduling Order is **ADJOURNED** as follows:

>  Discovery presented to Defendant:   April 15, 2022;
>  Final Pretrial Conference:          May 3, 2022, at 4:00 PM EDT; and
>  FIRM Jury Trial:                    May 17, 2022, at 8:30 AM EDT.

Dated: March 30, 2022                         s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge